JOHN M. WOOD, *in Equity, versus* ICHABOD GOODWIN *& als.*

When a railroad company owning a railroad lying in two different States, under charters from each of those States, mortgage the whole road and franchise, and their right to redeem in one State is sold on execution, the purchaser of the equity is entitled to redeem the whole road from the mortgage.

When the mortgagees are in possession for condition broken and to foreclose the mortgage, the owner of the equity will save the effect of the foreclosure by payment of what there is *now* due on the mortgage, but will not be let into possession unless he pays or provides security for the remainder of the debt secured by the mortgage *not yet due;* although the mortgage provides that the mortgagees shall not be entitled to possession till the condition is broken.

BILL IN EQUITY.

THE case was heard on *bill, answer,* and *documentary proof.*

The *bill* is dated March 14, 1861, and was filed in the clerk's office, March 18, 1861.

It alleges that the Great Falls and South Berwick Branch Railroad Company, a corporation established by the laws of this State, was seized, Sept. 1, 1854, in fee or otherwise, of a railroad lying within the county of York, and running to the line of the State of New Hampshire, and of the real estate upon which that railroad was located, (a particular description of which is not necessary,) and, being so seized, conveyed in mortgage to the defendants, as trustees for the Eastern Railroad Company, the said railroad, with the franchise, real estate, easements, &c., to secure certain bonds,

some overdue, and some not yet due; that, on the first day of June, A. D. 1855, the plaintiff commenced an action against said G. F. & S. B. B. Railroad Company, which was duly entered in court, and such proceedings were had, that, on the sixth day of December, A. D. 1857, he recovered judgment against said company, for $22,101,00 damages, and $484,58 costs of suit; upon which judgment execution was issued in due form of law, and was placed in the hands of the sheriff of York county for service; and he seized on said execution all the right in equity which said corporation then had of redeeming said railroad and its franchise from said mortgage, and, after due proceedings, sold and executed a deed of the same to the plaintiff, January 6, 1858; that the respondents entered into possession of said railroad, &c., April 20, 1858, for the purpose of foreclosing said mortgage, and had ever since remained in possession; that, on the twentieth day of November, 1860, he demanded of them a true account of the amount due on the mortgage, and of the receipts, &c., but that they had neglected and refused to render such accounts; that the plaintiff is ready to perform all the conditions of the mortgage, and he prays that he may be let in to redeem, that the respondents may be ordered to account, and that, on payment of the amount now due on the mortgage, he may be let into possession.

The *answer* alleges that the G. F. & S. B. B. R. R. Company, claiming to be the owners of a longer railroad than that described in the *bill*, extending from a point in Maine to a point in New Hampshire, made the mortgage referred to in the bill, embracing the portion of the road lying in New Hampshire as well as that lying in Maine, and denies that any separate mortgage of the portion in Maine was ever made; that the respondents have no knowledge that the plaintiff commenced the action, obtained the judgment, or purchased the equity of redemption, as alleged in the *bill*, save from common report; that he did call upon them by letter for an account as alleged in the bill, and they had not rendered any to him, but that their books were con-

stantly open for his inspection, as he well knew; that they took actual possession of said railroad in both States, Dec. 29, 1857, for the purpose of foreclosing said mortgage and fulfilling the duties of their trust; that said possession was commenced and held under judgments of the courts of Maine and New Hampshire; that more than one half of said railroad lies in New Hampshire, and that the foreclosure of said mortgage had become absolute long before the plaintiff called upon them for an account; and that they are lawfully in possession of said railroad under said judgments and foreclosure, for the purpose of fulfilling their trust duties; and that the plaintiff will not, upon the payment of what he proposes to pay, be entitled to disturb their possession. A copy of the mortgage, and of the judgments referred to, are annexed to the *answer*.

The judgment in New Hampshire was rendered by the Court of Common Pleas, holden at Dover, in the county of Strafford, on the third Tuesday of August, A. D. 1857. Judgment as on mortgage. Execution issued by which the respondents were put in possession of the railroad, &c., Dec. 29, 1857. The judgment in Maine was rendered by the Supreme Judicial Court, held at Alfred, in and for the county of York, on the first Tuesday of January, A. D. 1858. Judgment as on mortgage. Execution issued by which the respondents were put in possession of said railroad, April 20, 1858.

The provisions of the mortgage, which embraced the road in Maine and New Hampshire, do not become material, except the provision that the mortgagees were to *leave* the possession and control of the railroad in the mortgagers until condition broken.

The plaintiff introduced attested copies of the judgment, execution, officer's return thereon, and the sheriff's deed to him, which it is not necessary to recite, as no question was raised in regard to the regularity of these proceedings.

*Drummond*, for plaintiff.

The defendants took possession to foreclose, April 20,

1858. The bill was filed March 18, 1861. The mortgage was not then foreclosed, and the plaintiff is in season.

The defendants have waived a tender by refusing to render an account on demand. After demand, they are the moving party, and must render the account. *Roby* v. *Skinner*, 34 Maine, 270; *Stone* v. *Locke*, 46 Maine, 445.

The plaintiff, by the purchase of the equity of redemption, stands in the place of the mortgagers. If they would be entitled to redeem, he is.

They included in the same mortgage a railroad lying partly in Maine, and partly in New Hampshire. It necessarily follows that the redemption of the part which lies in each State must be governed by the laws of that State. If a man include in the same mortgage land situate in two different States, he does not thereby lose the right to redeem, but when he does redeem, he must follow the law *rei sitæ*. But it is said that in this mortgage the *franchise* of the railroad is included, and that that is in its nature *entire* and *indivisible*. I do not contend that a franchise may be apportioned on a railroad according to its length; I admit that a franchise *is* entire and indivisible. But it does not follow that a railroad may not have more than one franchise. In this case, there are *two*.

This road has two charters, one from Maine, and one from New Hampshire. Each charter confers a franchise. To all intents and purposes, there are, in contemplation of law, two different railroads included in this mortgage. The railroad lying in Maine acquires all its privileges, &c., from Maine, and is controlled by the laws of Maine.

The case, therefore, comes within the principle that when several parcels of real estate are included in one mortgage, the holder of the equity of redemption of either parcel may redeem.

As to the terms of redemption.

The defendants are the holders of a mortgage including two railroads. One of them is located in New Hampshire. So far as that road is concerned, the mortgage is foreclosed.

It is conceded that, under such circumstances, the defendants cannot be compelled to accept less than their whole debt. The law is· so settled in this State. *Smith* v. *Kelley*, 27 Maine, 237.

But it is equally well settled, that in such cases the mortgagees must release to the person redeeming their interest in the whole property; or, they may elect to retain that not claimed by the plaintiff and allow its value upon the mortgage debt. There is no reason why this rule should· not be applied where the property lies in different States. It would be inequitable in this case to allow the mortgagees to retain· one half the property mortgaged, and receive full payment of their debt besides.

Our Court can enforce its decrees. The *right* of the mortgagees to elect, is also a *duty*. If they will not make an election, or will not release, the Court can· deduct the value of the road in New Hampshire, from the whole mortgage debt, and upon payment by the plaintiff of the balance, decree to him the road in Maine, discharged of the incumbrance. The Court will assume in case the respondents refuse to release to the plaintiff the New Hampshire part of the road, that they *have* elected to retain it and apply it in part payment of the mortgage debt. In this manner, the rights of all parties would be fully protected.

Some of the bonds secured by the mortgage are overdue and some have a long time to run before becoming due.

The plaintiff, by payment of those now due, will of course destroy the effect of all the proceedings to foreclose.

We claim, also, to be entitled to possession, until, at any rate, there shall be (if ever,) another breach of the conditions of the mortgage. The mortgage provides that the mortgagers shall have possession until a breach of the condition. There has been such breach, and the mortgagees have accordingly taken possession.

But by redemption all the consequences of that breach of condition are repaired.

It will be observed that the fact that the defendants are

trustees, gives them no more powers, &c. The mortgage is to them as trustees for the Eastern Railroad Company. As to all the world, save that company, they are merely mortgagees. They have no more powers, &c., than their *cestuis que trust* would have had, had the mortgage been given directly to *them.*

Suppose a mortgage be given to secure the payment of $1000 in one year, and $1000 in ten years, and that it provides that the mortgager shall have possession until breach of condition. The mortgager fails to make the first payment and the mortgagee sues and obtains it. The mortgager brings his bill in equity to redeem, and, long before the second instalment becomes due, obtains a decree in his favor. Is he not also entitled to possession? That usually follows as a matter of course. Why not in the case supposed? I find no authority upon this precise question. But all the authorities treat redemption as restoring the parties to the same position, in all respects, which they occupied before breach of condition. At law, the estate is gone with the breach; but equity allows the mortgager to save his rights after that; and to have the same rights as he would have had if he had performed the condition.

By what authority do the mortgagees hold possession? not by virtue of the mortgage alone, because that provides *they shall not have possession save for condition broken.*

But, after payment of all there is due, they cannot then hold *for breach of condition.* The condition is not broken. They have their pay in full, and stand in equity precisely as if they had been paid as the payments became due.

Why shall they, then, hold possession in contravention of the provisions of the mortgage, for fear there may be a breach of the condition?

When the breach of a condition is waived, it is waived forever; and has no effect whatever. It is the same as if the condition had been performed. Bac. Ab., Condition, O, 3.

Now if, after there had been a breach of condition, the

mortgagers had paid the amount due, and the mortgagees had received it, it would have been a waiver of the breach of the condition.

No one would contend that the mortgagees could maintain afterwards an action for the possession, upon *that* breach of the condition which had already been waived by them.

Why, then, can they rely upon a breach which has been repaired by proceedings in equity, and after they have accepted all that is due them, and thus, in fact, as well as by operation of law, waived the breach?

If they are entitled to remain in possession, it is for condition broken. Does the mortgage become foreclosed in three years from time of payment? Or in three years from the next breach of condition, without further acts on their part? They are in by judgment of law to foreclose the mortgage. What steps must be or can be taken to foreclose the mortgage, in case of another breach of the condition?

I can come to no other conclusion, than that, by payment of all there is due, the parties are *restored to their original rights*, and that the plaintiff is entitled to possession, unless he shall again fail to perform the condition of the mortgage.

*W. H. Y. Hackett*, of New Hampshire, for the defendants.

[His argument did not come into the hands of the Reporter.]

The opinion of the Court was drawn up by

DAVIS, J. — This is a bill in equity, to redeem the Great Falls and South Berwick Railroad from a mortgage to the defendants, *in trust*, to secure the payment of certain bonds. The mortgage was given Sept. 1, 1854. After the bonds first payable became due, the defendants, as trustees, took possession of the railroad for condition broken. The right of redemption was afterwards sold by the plaintiff, upon an execution in his favor against the railroad company; and, having purchased the right of redemption himself, he de-

manded an account of the trustees under the mortgage, which they neglected to render.

If the special Acts of Maine and New Hampshire, passed in 1848, had been duly accepted by the Great Falls and Conway Railroad Company, and the Great Falls and South Berwick Railroad Company, those two companies would have been merged in the new one, by the name of the Portsmouth, Great Falls and Conway Railroad Company. In that case, there would be no valid mortgage and no equity of redemption. But, as neither of the special Acts appears to have been accepted according to its terms, we may assume that the Great Falls and South Berwick Railroad Company continued to exist, and that the mortgage is valid. Nor do we perceive any reason why the plaintiff, upon the case as stated and proved, is not entitled to redeem.

A part of the railroad is within this State, and the other part in New Hampshire. Whether there were two distinct corporations, or one only, under the charters granted by the two Legislatures, there was but one mortgage, and that embraced the whole railroad. The plaintiff proceeded upon the assumption that the mortgage was valid. He cannot deny it. He has no claim, if it was not. And the mortgage embracing the whole railroad, both in this State and in New Hampshire, the plaintiff must redeem the whole, if any. And, in order to do so, he must provide for the whole debt secured by it. For the mortgagees have a lien upon *every part* of the railroad to secure *every part* of the debt.

A part of the bonds secured by the mortgage are due; the rest have not yet matured. The trustees have taken possession. It is contended for the plaintiff, that he may pay up the amount *now due*, and be entitled to take possession, and hold it, until the condition shall again be broken by a non-payment of the bonds next maturing. But this is not the case. The trustees having taken possession for condition broken, are entitled, under the mortgage, to retain possession until the whole debt is adequately provided for, without requiring them to rely upon the mortgage. So long

as any necessity appears for them to rely upon this security, they are entitled to possession. The plaintiff will not be permitted to eject them, without paying all that is due, and depositing money, or otherwise providing, for the payment of the remainder as it shall become due.

. But the plaintiff, by paying all that is now due, will save a forfeiture. He will thus be placed in the position of the mortgagers; and the right of redemption will not be foreclosed. The trustees will be entitled to possession, and must account for the earnings. And, if the plaintiff shall pay them enough, with the earnings, to discharge all the bonds, as they become due, he will then be entitled to possession.

Whether the necessary proceedings have been had to give the plaintiff title to that part of the railroad lying in New Hampshire, is a question which the Court in this State have no power, in this case, to determine.

A master may be appointed to determine the amount now due and payable, after deducting the earnings of the railroad since the defendants took possession.

TENNEY, C. J., APPLETON, CUTTING, MAY and GOODENOW, JJ., concurred.