STATE MUTUAL BUILDING AND LOAN ASSOCIATION OF NEW JERSEY

*v.*

MILLVILLE IMPROVEMENT COMPANY.

[Decided July 7th, 1908.]

1. A mortgage originally given to secure a simple money bond may, by agreement of the mortgagor, be made security for the payment of a loan from, and for interest, dues, premiums and fines due to, a loan association.

2. When money is paid to a mortgagee, in consideration of the release from the lien of the mortgage of a part of the mortgaged premises to a

purchaser of the fee of the released portion, in the absence of agreement by the parties to the contrary, the law applies the payment in reduction of the mortgage debt *pro tanto*.

3. Where premises are purchased subject to encumbrances, among which is a sum due for taxes, the purchaser cannot set up an outstanding tax title acquired before the purchase of the mortgagor's title, whether the tax title be a lien only or a fee-simple; and especially so when the purchaser had previously acquired the tax title with a view to becoming the purchaser of the mortgagor's title.

On bill to foreclose. On exceptions to master's report.

*Mr. S. Stanger Iszard* and *Messrs. French & Richards,* for the complainant.

*Mr. Norman Grey,* for the defendant.

WALKER, V. C.

The mortgage being foreclosed in this case was made on August 31st, 1895, by the South Jersey Land and Transportation Company to Richard H. Rushton, conditioned for the payment of $26,000 January 1st, 1900, with interest at six per cent. per annum. There are no special covenants or agreements in the mortgage. It simply pledges certain lands and premises in the counties of Atlantic and Cumberland in this state for the payment of the mortgage debt.

On August 19th, 1896, the mortgage was assigned by Mr. Rushton to the complainant, the State Mutual Building and Loan Association of New Jersey. The assignment is without any covenant against the assignor. Contemporaneously with the making of the assignment a declaration of no set-off was given by the mortgagor, the South Jersey Land and Transportation Company (who had become a stockholder in the complainant association), to the assignee, the State Mutual Building and Loan Association of New Jersey, who is now foreclosing that mortgage. This document recites that the South Jersey Land and Transportation Company (the stockholder) has applied to the State Mutual Building and Loan Association of New Jersey, the complainant, for the loan and advance of $20,000, based on two hundred shares of stock in the association according to its constitu-

tion, by-laws and regulations, and proposes to secure the same by the assignment of the bond made by the South Jersey Land and Transportation Company to Mr. Rushton, conditioned to pay $26,000 January 1st, 1900, with interest, and the indenture of mortgage made and given to secure the same, which security the association is willing to take provided the South Jersey Land and Transportation Company will agree that the full sum of $20,000 is due and owing on the bond and mortgage, and that those securities shall fall due and become payable forthwith in case of any default in the payment of dues, interest, premium or fines, by the company to the association. The document then proceeds, in consideration of the premises, &c., to covenant that $20,000 of principal is due and owing on the bond and mortgage, and that the company has no plea, set-off or defence against the same in law or equity, and that in case of any default in the payment of any monthly installment of dues, interest, premium or fines on the loan, or any portion thereof, in accordance with said constitution, by-laws and regulations, then and in such case the bond and mortgage shall at the option of the association, its successors and assigns, forthwith become due and collectible, and said association, its successors and assigns, may forthwith proceed to collect and recover the principal and interest thereof, and use the proceeds to pay and discharge the loan and advance and the dues, interest, premium and fines accrued thereon, in the same manner as if the bond and mortgage had been made and given in the first instance to secure the same.

The defendant, the Millville Improvement Company, filed an answer which did not set up any defence or present any question except such as might be properly referred to a master, and the cause was, on December 31st, 1906, referred to Judge Starr, a master in chancery, to ascertain and report the amount due to the complainant on the mortgage and on the bond, and also whether the complainant is entitled to charge against or collect from the land described in the complainant's mortgage, dues, interest, premiums or fines, laid or imposed by the complainant, and for what amount a decree should be made in favor of the complainant on the mortgage, and what lands the mortgage is a lien upon, and what lien, if any, the defendant, Millville Im-

provement Company, has in any part of the lands by virtue of the purchase by it of a tax title from the township of Landis, and if a lien, the amount due thereon, and to whom, and the priority of the same with respect to the complainant's mortgage.

The master took considerable testimony and filed an elaborate report on May 31st, 1907. To this report four exceptions were filed, and the matter has been heard upon these exceptions. They will be considered together, and together they raise three questions—*first,* was the complainant entitled to charge against the South Jersey Land and Transportation Company dues, interest, premiums and fines; *second,* should the complainant have credited on the mortgage the amount paid to it for releases of parts of the mortgaged premises, instead of crediting those payments on account of the loan and advance, and *third,* is the defendant the owner of the land located in the township of Landis in fee-simple absolute, free from the lien of the complainant's mortgage, by reason of its acquisition of title under a sale for taxes of part of the mortgaged premises made by that township.

As to the first question, my judgment is that the complainant was entitled to charge against the South Jersey Land and Transportation Company dues, premiums and fines, as ascertained and set forth by the master in his report, and the amount of which as found by the master is the amount due and owing from the defendant to the complainant on the loan and advance referred to, and I hold that the complainant can recover against the defendant on the foreclosure of this mortgage the amount for which the mortgage stands as security, which is the principal of the loan, with interest, dues, premiums and fines.

In my opinion, the mortgage given by the South Jersey Land and Transportation Company to Mr. Rushton and by him assigned to the complainant, was, in the hands of the complainant, in virtue of the declaration of no set-off, which, as before stated, is also a contract between the parties, the same as though the mortgage were originally made between the same parties as security for the loan made by the complainant to the defendant. As is well known, there are regular forms of bonds and mortgages given to building and loan associations to secure the pay-

ment for shares of capital stock and for interest, dues, premiums and fines. Although the mortgage in question was not one of them, as originally drawn, nevertheless, in effect, it became such, in equity, by virtue of the declaration of no set-off.

In *Jones Mort. (6th ed.)* § 357, it is laid down:

> "As against the mortgagor, his agreement that the mortgage shall stand as security to the mortgagee for further advances, although it be oral only, is valid, and, after the advances have been made upon the faith of it, a court of equity will not allow the mortgagor to redeem without performing it."

This question has been settled by the court of errors and appeals of this state in *Atwater* v. *Underhill, 22 N. J. Eq. (7 C. E. Gr.) 599.* Mr. Justice Depue, in the opinion in the case (at *p. 603*), said:

"A mortgage which has been satisfied may be given a new vitality by a redelivery by the mortgagor to the mortgagee or a third person, upon a new consideration, or for a purpose different from that for which it was made. *Robinson* v. *Urquhart, 12 N. J. Eq. (1 Beas.) 515; Hoy* v. *Bramhall, 19 N. J. Eq. (4 C. E. Gr.) 563.* But to give such effect to the mortgage the repledging must be made by the authority of the person whose estate is sought to be held for the performance of the new obligation. Mrs. Atwater was the owner of the mortgaged premises, and the mortgage when once extinct could only be revived by an authority which emanated from her."

The same doctrine is exploited in *Whitney* v. *Franklin, 28 N. J. Eq. (1 Stew.) 126, 130; Campbell* v. *Perth Amboy Shipbuilding Co., 70 N. J. Eq. (4 Robb.) 40, 59.*

Thus it appears that not only may a subsisting mortgage be made security for a further or other debt than that for which it was originally given, but that after it has become extinct it can be revived and repledged.

It will be remembered that the South Jersey Land and Transportation Company was the mortgagor, and that it itself made the agreement directly with the complainant whereby its mortgage after assignment by Mr. Rushton, the mortgagee, was pledged as security for the loan and advance made to it by the

complainant. In this posture of the affair it was as though the mortgage had never been given to secure Mr. Rushton, but to secure the performance by the mortgagor of his contract of membership with his fellow stockholders in the complainant association. *Clarksville B. and L. Association* v. *Stephens, 26 N. J. Eq. (11 C. E. Gr.) 351, 355; State W. B. and L. Association* v. *Hornbaker, 41 N. J. Law (12 Vr.) 519, 522; Bowen* v. *Lincoln B. and L. Association, 51 N. J. Eq. (6 Dick.) 272.* In the last case (*Bowen* v. *Lincoln B. and L. Association*) the bond provided only for the payment of dues and interest, but not for fines, and the court of errors and appeals (at *p. 280*) intimated that if the constitution and by-laws had declared that fines should be collected out of the proceeds of the sale of property pledged to secure a loan made to a member, that might justify the decree under review, which visited the payment of fines upon the defendant, and which was reversed because the court found nothing in the contract under which the payment of fines could be enforced in that suit.

In *New Jersey B. L. and I. Co.* v. *Bachelor, 54 N. J. Eq. (9 Dick.) 607*, the amount held to be due upon the mortgage was that actually paid upon it, together with premium and monthly payments required to be made by the terms of the bond and mortgage.

*Secondly.* The master finds upon the evidence that there was no application made by the defendant of the various sums received for releases of parts of the mortgaged premises to the payment of the mortgage debt. In this I think he has erred, but the error is harmless, as will be seen.

On August 20th, 1896, the president of the complainant association wrote a letter to the president of the South Jersey Land and Transportation Company in which he said:

"Regarding the matter of your loan from this association of $20,000, we understand you desire releases from time to time on a portion of the mortgaged premises, paying us a satisfactory sum therefor which shall be agreed upon from time to time, reducing the loan to that extent. We have no objection to doing this at all," &c.

And counsel for the defendant, Millville Improvement Company, contends that this amounts to a valid direction to have the

MAY TERM, 1908. 727

*4 Buch.*        State Mutual B. & L. Asso. *v.* Millville Imp. Co.

money applied on the mortgage, but cites no authority to sustain his position. He evidently treats the mortgage debt as a thing apart from the loan and advance which the mortgage was assigned to secure. My view is contrary to the contention of counsel on this head. As I read the communication it is a direction to apply the moneys on the loan and advance, which is, as between the parties to this suit, the mortgage debt, as has already been seen, and for the payment of which the mortgage was assigned.

I take it that where money is paid to a mortgagee in consideration of his release of a part of the mortgaged premises from the lien of his mortgage to a purchaser of the fee in the released portion, the law applies the payment in reduction of the mortgage debt *pro tanto,* and that application of the payment to some other debt between the parties can only be made by their mutual agreement.

In *Jones Mort.* (6th ed.) § 907, it is laid down:

"If a mortgagee release a portion of the mortgaged premises to one who has purchased the equity of redemption of that portion, the money paid him for such release is deemed a payment upon the mortgage debt and he cannot apply it in discharge of other debts due him from the mortgagor."

In *Hicks* v. *Bingham, 11 Mass. 300,* it was held: "Where a mortgagee of two parcels of land released one of them to an assignee of the mortgagor, she was held to apply the money paid in consideration of such a release in discharge of so much of the sum due on the mortgage, although the mortgagor was still indebted to her on other accounts." And Justice Putnam (on *p. 302*) remarked:

"And we are all of opinion that the respondent is bound to apply the consideration which she received for a release of a part of the mortgaged premises towards payment of the mortgage. It was received by her in consequence of the mortgage, and the price of the land mortgaged, as well as the rent of it, received by the mortgagee, ought to be applied towards the extinguishment of the debt secured by the mortgage."

But, after all, in this case, in my opinion, an appropriation by the complainant of moneys received for releases of portions of the mortgaged premises, to the payment of the loan and advance, is an application of payment upon the mortgage, because that mortgage, although originally not so written, nevertheless, by virtue of the declaration of no set-off and agreement between the parties, at the time the releases were given and payments made, stood as security for the loan and advance made by the complainant to the South Jersey Land and Transportation Company, the defendant's predecessor in title, as effectually as though it were originally written to secure that very debt.

Although counsel for defendant contends that the money received for the releases should have been applied to the mortgage debt instead of the loan and advance, his position in this regard is founded in a misconception, for, by virtue of the agreement mentioned, the loan and advance became the mortgage debt.

As to the question of tax title. In the year 1902 the South Jersey Land and Transportation Company was decreed to be insolvent in a suit in this court wherein Edward R. Wood was complainant and that concern was defendant. In that proceeding application was made to sell the mortgaged premises free from the lien of the mortgage which is now being foreclosed, which application was refused and an order was made for the sale of the premises subject to the mortgage. The sale took place in August, 1904, and the property was purchased by the defendant, the Millville Improvement Company, whose deed for the land was executed and delivered in September, 1904.

In April, 1904, that part of the mortgaged premises which is situate in the township of Landis was sold for unpaid taxes and the township became the purchaser. In May, 1904, the township sold the property to the defendant, Millville Improvement Company, who thereafter acquired the title of the South Jersey Land and Transportation Company in the mortgaged premises as above stated.

The title acquired by Landis township and by it transmitted to the Millville Improvement Company is said to be a title in fee-simple absolute, free and discharged from any estate in or lien upon the same in favor of the complainant as mortgagee,

unless in equity and upon principle it should be held, as the master reported, that as against the complainant the defendant has only a lien for the money expended in acquiring the tax title or deed, and that the complainant is therefore entitled to redeem.

Counsel for the complainant asserts that the South Jersey Land and Transportation Company was really Mr. Wood and that the Millville Improvement Company is the same, that is, as he was the president and the dominant factor of both corporations, they are bound by his acts in reference to the subject under consideration as much as though he himself were the defendant in relation to those acts.

The case of *Burgin* v. *Rutherford, 56 N. J. Eq. (11 Dick.) 666,* is cited by complainant's counsel as authority for the proposition that the Millville Improvement Company, as the holder of the tax title in this case, has only a lien upon the property for the amount paid for it, and that the complainant has the right to redeem the land from the tax sale. That case (*Burgin* v. *Rutherford*) was affirmed in the court of errors and appeals for the reasons given in the court of chancery (*Burgin* v. *Rutherford, 56 N. J. Eq. (11 Dick.) 852*), but is not an authority in this case to the full extent claimed by counsel. In that case (*Burgin* v. *Rutherford*) the defendant, Kaighn, a third party, had not acquired a fee-simple absolute title by virtue of a tax deed, but held only a certificate of sale, and by virtue thereof had only a lien upon the mortgaged premises (*Burgin* v. *Rutherford, 56 N. J. Eq. (11 Dick.) 669*), which, of course, could be redeemed.

Whether the Millville Improvement Company purchased the equity of redemption in such a way as to be liable to pay the taxes, or whether the sale to it was one in fee-simple by which the interest of the mortgagee was divested, it is not necessary to decide.

Although the tax title was acquired by the Millville Improvement Company before it took title to the mortgaged premises by sale from the receiver of the South Jersey Land and Transportation Company, nevertheless, it took its title from him subject to encumbrances, including the tax lien in whatever form it existed, as will presently be shown. The acquisition of the tax title was

only a step in the purchase ultimately of the entire premises of the South Jersey Land and Transportation Company by the Millville Improvement Company, as contemplated by it. This, I think, abundantly appears from the evidence.

Those two companies were distinct and separate entities it is true, but, nevertheless, Mr. Wood was their agent with plenary powers, and his knowledge was their knowledge, and his acts bound them, at least so far as corporations may be bound in law by the acts of their agents.

Mr. Wood made an affidavit in the insolvency proceedings against the South Jersey Land and Transportation Company on August 3d, 1904, in which he stated that there was due to the State Mutual Building and Loan Association of New Jersey (the complainant in this cause), on the mortgage being foreclosed (and a certain other mortgage), the sum of $36,281.11, besides unpaid taxes in the township of Buena Vista, in the county of Atlantic. This sum admittedly included the amount of the Landis township taxes, and for which that township sold a portion of the mortgaged premises to the Millville Improvement Company. About the time of the sale by the receiver to the Millville Improvement Company, negotiations were entered into between the complainant and defendant and the American Land Improvement and Silk Culture Association concerning the lands in question, which recited the debt due from the South Jersey Land and Transportation Company to the complainant to be the sum of $36,281.11, and this agreement was actually executed by the Millville Improvement Company, though for want of execution by the American Land Improvement and Silk Culture Association it did not become operative.

Mr. Wood, in his testimony before the master on April 17th, 1907, after stating that the purchase by the Millville Improvement Company of the tax title from Landis township was for its own account and with the expectation of making a profit out of the transaction, was confronted with his affidavit made in the insolvency proceedings, and then admitted that the amount due as stated in that affidavit and in the agreement executed by the Millville Improvement Company included the Landis township taxes for which the property was sold. If anything were want-

ing to show the knowledge of the Millville Improvement Company of the situation with reference to the Landis township tax title and the power of Mr. Wood to act for and bind the company, it is, in my judgment, supplied by Mr. Wood's affidavit and the tripartite agreement executed by it, to say nothing of the evidence before the master, including the testimony of Mr. Wood.

A corporation is bound by the acts of its president within the apparent scope of his authority which it authorizes, acquiesces in or accepts the benefit of. *Bennet* v. *Millville Improvement Co., 67 N. J. Law (38 Vr.) 320.*

It is perfectly apparent that Mr. Wood was authorized to act for the Millville Improvement Company with reference to the acquisition of title from the receiver of the South Jersey Land and Transportation Company subject to the lien for taxes of Landis township, and that it acquiesced in all that he did in its behalf, and it would have accepted the benefits of his negotiations in the form in which they were cast in the tripartite agreement, had that agreement become efficacious by execution on the part of all the parties to it.

In the insolvency proceedings of Wood against the South Jersey Land and Transportation Company, to the petition filed by the receiver for leave to sell the lands free from encumbrances, Mr. Wood appended an affidavit in which, among other things, he said that Landis township was offering for sale all of the lands of the South Jersey Land and Transportation Company situate within its boundaries, claiming title thereto by virtue of proceedings under the Martin act, meaning the tax title in question. Leave to sell free of encumbrances being denied, another petition was preferred by the receiver praying the court to order a sale subject to encumbrances. Such an order was made and the Millville Improvement Company offered the receiver $250 for the property "subject to encumbrances," and the receiver reported that the offer was equivalent to a bid of about $40,000. This sum included the Landis township taxes. Upon becoming the purchaser of the lands upon these conditions the defendant, the Millville Improvement Company, became obligated to extinguish its tax title as against the complainant's mortgage. It

thereupon owed a duty to do so, for, as remarked by Vice-Chancellor Van Fleet, in *Foley* v. *Kirk, 33 N. J. Eq. (6 Stew.) 170:*

"It is a universal principle that a purchase at a tax sale by one whose duty it was to pay the taxes shall operate only as an extinguishment of the tax. One man can acquire no rights against another by a neglect of a duty which he owes to the other."

It is unnecessary to hold that when the Millville Improvement Company acquired the tax title through the operations of Mr. Wood, the purchase was really made for the benefit of the mortgagor, the South Jersey Land and Transportation Company, in which case it would enure to the benefit of the mortgagee complainant. If by its contract of purchase the Millville Improvement Company agreed, as part of the consideration, to take title subject to encumbrances, among which were the Landis township taxes, then it just as effectually became its duty to refrain from setting up an adverse tax title against the complainant's encumbrance as though it were obligated to pay the taxes in the first instance.

The master correctly found that the claim of the defendant under its tax title could not be sustained, but that it was entitled to be subrogated to the rights of the township by way of tax lien, and to be reimbursed out of the sale of the mortgaged premises the sum paid for taxes, by way of lien paramount and prior to that of the complainant's mortgage. This is, in effect, providing for redemption.

The exceptions will be overruled, and the master's report will be in all things ratified and confirmed, with costs.