WILLIAM F. GILLIES et al., complainants-respondents,

*v.*

FREDERICK MONROE DYER et al., defendants-appellants.

[Argued March term, 1922.   Decided June term, 1922.]

1. Where a mortgage provided that on payment of not less than a stated amount the land should be released *pro rata*, and, after maturity, on the owners paying more than the stated amount, the mortgage was extended, nothing being mentioned in the extension agreement concerning any release, the owner of the land was not entitled to a *pro rata* release.

2. The maxim that one seeking equity must do equity applies where a mortgagor's successor paid part of the debt after maturity, and claimed a partial redemption under a *pro rata* release provision of the mortgage, and his attitude in seeking to lessen the value of the security indicated that he did not intend to pay the residue.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Griffin and reported in *93 N. J. Eq. 348*.

*Mr. Edwin T. Murdock*, for the complainants-respondents.

*Mr. Andrew Foulds, Jr.*, for the defendants-appellants.

The opinion of the court was delivered by

MINTURN, J.

The mortgage under foreclosure contained this provision:

"It is expressly agreed by and between the parties hereto that on the payment of not less than ten thousand dollars of the principal sum secured by this mortgage, there will be released from the lien of this mortgage such an amount of land as shall bear a *pro rata* to the value of the whole tract covered by this mortgage."

The clause in the bond reads:

"And it is hereby expressly agreed that the said Ernest R. Hunter shall have the privilege of paying the principal sum secured by this bond at any time after two years from the date hereof. This clause shall not effect the release clause in the mortgage which accompanies this bond."

The mortgage was in the usual form containing, *inter alia*, the usual interest and tax clauses. It was executed by one Ernest R. Hunter on October 31st, 1911, then owner of the premises which subsequently became the property of the defendant. About a month after its maturity and on November 22d, 1916, the defendant paid on account of the principal the sum of $14,800. This payment left $20,200 due of the principal sum. An extension agreement was thereupon executed between the parties, reciting the partial payment and the extension of time for payment, and it then proceeded:

"Provided the party of the second part meanwhile pays interest on said bond as reduced to twenty thousand two hundred dollars, at and after the rate of five per cent. per annum, from November 9th, 1916, and semi-annually thereafter on the sixth day of March and September in each year, and also complies with the other terms of said bond and mortgage; and the said party of the second part, in consideration of the above extension and of one dollar paid by said parties of the first part, the receipt whereof is hereby acknowledged, does hereby covenant and agree to pay said principal sum and interest as above set forth, and comply with the other terms of said bond and mortgage."

Nothing, it will be observed, is contained in this instrument which refers in any manner to a release of the lands, or any part thereof in consideration of the part payment of principal. The extension manifestly contains the sole conditions upon which it was executed. If the right to release these lands, or any part thereof, was in the minds of the parties at the time of the execution of this extension, it seems to have been entirely ignored in treating of a basis for the new relationship between them. During the life of the mortgage the covenant for a release possessed vitality, but when the mortgage debt became due the reason for the existence of the covenant was at an end, and the status of the parties assumed a new form, due to the changed contractual situation.

The mortgage being due, the complainant under the newly-created situation had a legal right to then and there foreclose,

but instead of insisting upon that right, he entered into a written concession for the payment of the balance due, which concession contained within itself the sole conditions upon which the parties on the one side extended, and on the other side accepted, the concession which created a new *modus operandi*.

Upon a bill filed for the foreclosure of the mortgage under this new status for non-payment of the interest due, the defendant attempts to set up the claim that he is entitled to a release *pro tanto* of the mortgaged premises covering an area in value equal to the $14,800 paid at the time of the execution of the concession, under the changed conditions. It should suffice to say, that if such a right existed at the time the concession was executed, it should have been incorporated with the other conditions in that instrument, as an existing right within the contemplation of the parties which was not to be considered as waived by the substituted *modus vivendi*. The fact that it was not incorporated in the concession affords strong evidence, from which it might be deduced that the defendant did not claim this privilege as his right, and therefore waived it as *quid pro quo* for the concession. When the mortgage fell due, and the defendant could not meet it as an entirety, the right of the complainant to foreclose was complete, and the only privilege the defendant then possessed was that of a right of redemption by payment of the entire indebtedness of the bond. *Avon-by-the-Sea, &c.,* v. *Finn, 56 N. J. Eq. 805.*

The status of the defendant, therefore, in legal effect is that of a mortgagor filing a bill to redeem, and in such a situation the rule is invariable, that a decree of redemption, and, *a fortiori,* a decree of partial redemption, which lessens the mortgagee's security *pro tanto,* can be obtained only upon payment of the mortgage debt. *19 R. C. L. 506* and cases; *Street* v. *Beal, 16 Ia. 68; Wood* v. *Goodwin, 49 Me. 260.*

This obligation the defendant has not tendered himself as ready to perform; nor does his attitude in the case indicate that he has in view any other purpose than to ignore the plain effect of the concession, and by obtaining a release of a portion of the mortgaged property which was pledged as an entity for the payment of the entire indebtedness, thus lessen the security

of the remainder of the pledge, as a basis for the payment of the admitted mortgage debt.

In such a situation the maxim that "He who seeks equity must do equity" has its application as we have applied it in a case where the existing equity was equally cogent because the mortgage admittedly covered more property than it was intended to cover as a security for the debt. *New Jersey Franklinite Co. v. Ames, 12 N. J. Eq. 66.*

The decree appealed from will be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, WILLIAMS, GARDNER, ACKERSON, VAN BUSKIRK—14.

*For reversal*—None.