The bill is to foreclose a mortgage for $22,000, dated October 24th, 1929, executed by David A. Veeder to the Great Eastern Building Corporation, in part payment of the purchase price of certain land in Ocean county conveyed to him by the Great Eastern Building Corporation by deed of even date with the mortgage. The bill is founded upon an alleged default in the payment of an installment of $2,500 on account of principal and six months' interest at six per cent., which, under the terms of the mortgage, became due on October 24th, 1933. The defense is that payment of said installment was waived by the holder of the mortgage and that the interest rate had, by agreement of the parties, been reduced to four per cent., the amount of the interest at that rate having been tendered and refused. Six months' interest at four per cent., or $440, was paid into court after this bill was filed. The complainant is the holder of the mortgage by mesne assignments. The defendant mortgagor has filed a counter-claim in which he seeks a reformation of the mortgage with respect to the release clauses and also a decree directing the complainant to release certain particular tracts of land from the lien of said mortgage upon payment of the consideration therefor as provided in the mortgage and which consideration, it is claimed, was tendered prior to the alleged default.
For a complete understanding of this controversy it is necessary that the transactions leading up to the execution of the mortgage and subsequent negotiations between the parties be recited in some detail.
On August 21st, 1929, the defendant Veeder entered into a written agreement with the Great Eastern Building Corporation for the purchase of certain lands in Ocean county, at a price and upon terms therein stipulated. The total purchase price was not fixed definitely in the agreement, but was dependent in part upon the area of the lands involved, which was to be determined by a survey. The agreement provided for the payment of $1,000 in cash upon its execution; $19,000 upon settlement and the balance by the execution and delivery by the vendee to the vendor of two separate *Page 400 
and distinct mortgages. One mortgage was to be in the sum of $22,000 and was to cover only a portion of the property described in the agreement of sale and which was shown on the map (ExhibitD-1) as sections 1 and 2. Most of section 1 was actually included in the mortgage which was thereafter executed. The other mortgage, the amount of which had not been determined, was to represent the balance of the purchase price figured upon an acreage basis after the survey had been completed, and was to cover all that portion of the entire tract which was not covered by the $22,000 mortgage. The agreement provided for releases from the lien of the mortgages of certain portions of the property on payment of certain consideration therefor. The settlement under the agreement was made on October 24th, 1929, at which time, instead of the purchaser giving the seller two mortgages he gave him only one, namely, the $22,000 mortgage the subject of this suit, and paid all of the balance of the purchase price in cash, that balance amounting to some $42,000. The mortgage which was executed provided for installment payments of $2,500 each on account of the principal on October 24th, 1933; and annually thereafter until October 24th, 1936, when the balance of the purchase price was to become due. Interest at the rate of five per cent. per annum was payable until October 24th, 1932, and thereafter at the rate of six per cent. The mortgage also contains this provision:
"Provided, there shall not at the time be a default in the payment of principal, interest or in the performance of any of the other covenants and conditions in this mortgage or the accompanying bond.
"Any owner of the said premises upon ten days' previous request therefor and upon furnishing a map to the mortgagee showing the lands to be released, and upon the payment of the consideration hereinafter mentioned * * *."
should be entitled to releases of individual lots.
While the mortgage is not exactly a work of art, I think it is clear that these two paragraphs or clauses are inter-dependent and were intended so to be. From the language of this proviso, preceding the release clause, it is plain that the right to releases is dependent upon no default having occurred *Page 401 
in the payment of either interest or principal installments.Gillies v. Dyer, 93 N.J. Eq. 635; 1 Jones Mort. 98; 2 Jones1259.
On April 10th, 1930, the Great Eastern Building Corporation assigned this mortgage to Jennie Smadbeck, who, on June 28th, 1933, in turn assigned it to the complainant, her son-in-law. The non-payment of the $2,500 installment which under the terms of the mortgage was due October 24th, 1933, and the non-payment of the interest on that date are admitted by the defendant mortgagor who claims that, notwithstanding, there was no default on the mortgage because, prior to the due date of the said installment and interest, the rate of interest on the mortgage had been reduced from six per cent. to four per cent., which amount he tendered, and the installment payment of $2,500 had been entirely waived by agreement between the mortgagor and the then holder of the mortgage. The evidence that this is so is convincing. One interest payment at the rate of four per cent., namely, that due in April, 1933, had been paid by the mortgagor and accepted by Mrs. Smadbeck, the then holder of the mortgage, pursuant to that agreement. Her son, who acted as her agent, admitted that he agreed to a reduction of the interest from six per cent. to four per cent. and also that he had agreed to waive the $2,500 installment due October 24th, 1933; but it is claimed that that agreement was withdrawn and canceled. The facts respecting this transaction are as follows: After the agreement for the reduction of interest and waiver of the installment payment, Mrs. Smadbeck, on June 28th, 1933, assigned the mortgage to her son-in-law, the complainant. On June 29th, 1933, Dr. Smadbeck, by letter, notified Judge Veeder that the waiver of the installment payment was withdrawn and the agreement for reduction of interest canceled. The letter was mailed on June 30th, and reached Judge Veeder's office on July 1st, but was not actually received by him until about August 1st, he being away on vacation when the letter arrived in Toms River. It is conceded that the agreement for reduction of interest and waiver of installment payment was without consideration and that it was subject to revocation by the holder of the mortgage unless acted upon *Page 402 
by the mortgagor to his prejudice prior to withdrawal. It will be noted that at the time Dr. Smadbeck attempted the withdrawal of his waiver, his mother was no longer the owner of the mortgage and there is no proof that he was authorized to act for the assignee. So far as his attempted revocation or recall of the waiver and agreement are concerned, I think it may be considered as abortive, as he acted without authority. All subsequent negotiations touching this mortgage were with the assignee or his attorney. But I am of the opinion that the complainant, Bleyer, took the mortgage subject to all equities between the mortgagor and the original mortgagee, or its assignee, and is bound to the same extent as his assignor. Sabatino v. D'Aloise, 107 N.J. Eq. 426; George F. Perry Sons, Inc., v. Mand, 110 N.J. Eq. 111; Henion v. Monahan, Ibid. 361; Feinberg v. Rowan,111 N.J. Eq. 138. While he did not specifically withdraw his assignor's waiver I think his refusal to be bound by it, and his demand for the installment payment and interest at six per cent., was in effect a withdrawal or revocation of his assignor's agreement of waiver. Whether that withdrawal was effectual or not depends upon the alleged estoppel arising from the mortgagor's acts in reliance upon the waiver. The only prejudicial acts of the mortgagor in reliance upon the agreement of waiver consist of two payments of money, one of $25.84 and the other of $65, both of which represent expenditures in connection with improvements on the mortgaged premises. These are insufficient to work an estoppel. It is claimed, however, that at the time the waiver was given the mortgagor could have raised sufficient money to pay the October installment and interest at six per cent. but that in reliance upon the waiver "he otherwise arranged his finances so that when he finally received notice of the attempted withdrawal of the concession * * * he was then unable to make arrangements to meet the demands." And this is urged as an additional element of estoppel. But it is unavailing. The concessions were obtained upon the representation by the mortgagor of his inability to meet the payments. If his present argument is based upon fact, then he is "hoist by his own petard" because it is apparent that the concessions were obtained by misrepresentation. *Page 403 
Other grounds of estoppel concern the erection of houses on portions of the mortgaged premises by lot purchasers who, it is claimed, would not have been permitted by the mortgagor to erect such houses except for the waiver. In my judgment neither the payments mentioned nor the additional facts alleged constitute an estoppel.
But it is claimed that, assuming the $2,500 installment was due and payable as alleged, the defendant mortgagor was nevertheless not in default as he was entitled to a credit against that installment of the amount tendered for releases, some $3,600, and which the complainant wrongly refused to accept. The right to releases being dependent upon the absence of any default in the mortgage, as already indicated, the mortgagor was entitled to no such credit. The installments of principal required by the terms of the mortgage were in addition to moneys required for releases.State Mutual Building and Loan Association v. MillvilleImprovement Co., 74 N.J. Eq. 721, relied upon by both parties, has no application to this particular question.
I conclude, therefore, that the complainant was entitled to interest at six per cent. and a $2,500 installment on account of principal on October 24th, 1933. Such payments not being made on or before November 24th, 1933, the expiration date of the grace period provided in the mortgage, the mortgage was then in default and subject to foreclosure. This brings us to the issues raised by the counter-claim and answer thereto.
As already stated, the defendant mortgagor, by his counter-claim, seeks a reformation of the mortgage with respect to certain provisions concerning releases and a decree directing the complainant to execute and deliver releases applied for in the summer of 1933. At the conclusion of the final hearing, I stated that unless barred by his own acts, the mortgagor was probably entitled to the reformation sought. The facts upon which I based this conclusion are as follows:
When the agreement of sale was entered into between Judge Veeder and the Great Eastern Building Corporation the parties came to a definite understanding with respect to releases of individual lots from the lien of the mortgage and reduced that understanding to writing. It was then anticipated that *Page 404 
two mortgages would be executed. After the execution of that agreement a copy was retained by a Mr. Rawak, the attorney for the vendor, and he prepared the deed to be executed by the vendee. No change in the agreement affecting this controversy was made or authorized after its execution. Prior to the date fixed for settlement, however, it having been then determined that Judge Veeder was to execute but one mortgage and was to pay all the balance of the purchase price in cash, Mr. Rawak was notified that only one mortgage, that for $22,000, would be necessary and he accordingly prepared the mortgage which was to be executed at the settlement. In the preparation of that mortgage he deviated from the exact terms of the agreement in three important particulars. The agreement contained the following provision:
"Any lots having dimensions other than 25 feet front and rear by 100 feet in depth are to be released on the basis of the above area."
In the mortgage this paragraph was changed to read as follows:
"If any lots have a dimension of more than 2500 square feet, the release price shall be proportioned on the basis of a lot having an area of 2500 sq. ft."
That was a very material change and resulted in the strict terms of the mortgage requiring more substantial payments for releases than would have been required had the terms of the agreement of sale been incorporated in the mortgage as it was intended they should be. Another change which he made was with respect to the location of the lots to be released and their contiguity. The third change was with respect to releases after default under the mortgage. None of these changes had been authorized by any of the parties. The paragraph of the mortgage touching the location of the lots to be released and their contiguity reads as follows:
"In the application for releases the owner may request and receive releases of lands beginning either at the south line and/or at the west line of the said premises and thereafter releases shall be of lots contiguous to the lands previously released." *Page 405 
The corresponding paragraph in the agreement of sale was as follows:
"In the application for releases, the owner may release lands beginning either at the south line and/or the west line of said lands and thereafter releases shall be of lands contiguous to lands either at the south or the west line."
But this paragraph had no relation to the $22,000 mortgage which was executed; it referred to the second of the two mortgages which was to have been executed but which was not because the balance of the purchase price was paid in cash. Mr. Rawak was not justified in including that clause in the $22,000 mortgage as finally prepared, without specific instructions from the principals to the contract, and this he did not have. It is quite obvious that the result of the insertion of this clause in the mortgage was to materially increase the requirements for releases, as is indicated by the demands made by the complainant during the summer of 1933 when Judge Veeder was attempting to obtain releases in accordance with his understanding of the terms of the mortgage. He applied for releases long prior to any default, which he figured would cost him approximately $3,600, and which amount he tendered and offered to pay. The complainant then claimed that under the terms of the mortgage he was entitled to a sum in excess of $15,000 for the releases requested. It was only then that Judge Veeder learned of the provision in the mortgage just referred to and which had been inserted without any authority from the parties to the agreement of sale. The negotiations concerning the requested releases continued for many weeks, but long prior to October 24th, 1933, the complainant had definitely refused to accept the amount which Judge Veeder offered and had insisted upon payments to which he was not entitled. At the conclusion of the final hearing I stated that I was of the opinion that the drafting of the mortgage at variance with the agreement of sale was the result of mutual mistake and I based this conclusion upon the fact that neither party to the agreement had any knowledge of the changes which Mr. Rawak made in the terms of the mortgage nor of the insertion in that mortgage *Page 406 
of a clause which had no application thereto but which related to a mortgage which was not executed. The counter-claim alleges that the execution of this mortgage was procured by fraud in that the agent of the mortgagee represented to the mortgagor that the mortgage was drawn in accordance with the terms of the agreement and that it was executed by the mortgagor in reliance upon that representation without reading it. I then stated that the evidence on this point consisted of the testimony of Judge Veeder who claimed that such representation was made and that of Mr. Guttentag who claimed that it was not. I said that the evidence was in balance. But since the final hearing, and in defendant's brief, my attention has been called to the fact that one other witness, Mr. Thompson, a real estate agent who was present at the settlement, also testified to the representation by Mr. Guttentag that the mortgage was drawn in accordance with the terms of the agreement of the parties, and that this corroborated Judge Veeder's testimony. A transcript of the testimony of this witness shows such corroboration. It would, perhaps, be idle for me to advert to this circumstance except that complainant in his brief contends that there was no mutual mistake because the knowledge of the mortgagee's attorney touching the changes in the terms of the mortgage was the knowledge of his client. If this is so, then I think we must assume that the mortgagee was guilty of fraud in procuring the execution of a mortgage which it knew was not in accordance with the terms of the agreement solemnly entered into. Mr. Guttentag was the agent of the mortgagee at the settlement under the contract of sale, as was also Mr. Rawak who prepared the mortgage, and it is entirely settled, that if a principal seeks to enforce a contract made by his agent, he is as much bound by any material representation made by the agent as if made by himself. Alexander v. Brogley, 63 N.J. Law 307. "An innocent principal cannot assert any rights or retain any benefit, upon a contract which is procured by fraud of his agent." Lloyd v. Hulick, 69 N.J. Eq. 784. A principal claiming the benefit of his agent's unauthorized act thereby ratifies that act and is bound by it. Pappas v. Foster ScreenCo., 95 N.J. Eq. 399; Chapin v. Kreps, 106 N.J. Law 424; *Page 407 Stramke v. George A. Raker Co., Inc., 109 N.J. Eq. 176;Camden Securities Co. v. Azoff, 112 N.J. Eq. 270. To say the least, it was Mr. Rawak's duty to disclose to Judge Veeder the changes which he made in the mortgage before it was presented for execution. Nicholson v. Janeway, 16 N.J. Eq. 285; Gordon v.Schellhorn, 95 N.J. Eq. 563. The mortgagee, and the complainant assignee, are bound by Mr. Rawak's failure to do so. It is clear that these challenged provisions of the mortgage were a result of either mutual mistake of both parties to the agreement or fraud on the part of the mortgagee. In either event, the defendant counter-claimant is entitled to relief (Forman v. Grant LunchCorp., 113 N.J. Eq. 175) and the mortgage will be reformed accordingly.
At the conclusion of the final hearing I also suggested that Judge Veeder being a member of the bar of this state, and having had the opportunity to examine the mortgage before executing it and not having done so, might be barred from relief by his own negligence; but I have concluded that there is nothing in this suggestion. "Equity does not distinguish between the deception of lawyer and layman." Forman v. Grant Lunch Corp., supra.
Reading the mortgage as reformed, it is clear that when application for releases was made the complainant was not entitled to receive any more for them than Judge Veeder offered. The application for such releases, the tender or offer of payment, and the refusal and demand of the considerably larger sum as consideration therefor, were made long before October 24th, 1933, and before any default in the payments required by the mortgage. The rights of the parties with respect to those releases must be determined as of that time. For this reasonGillies v. Dyer, supra, is not controlling. Besides, the complainant, seeking equity, must do equity. That being so, I think it is clear that the mortgagor is now entitled not only to reformation, but to a decree directing the execution and delivery of the releases then requested upon payment of the release price according to the terms of the mortgage as reformed.
The result is that the complainant is entitled to a decree *Page 408 
in foreclosure for such amount as remains due after credit upon the mortgage of the amount tendered and to be paid by the defendant mortgagor for the releases requested prior to default and the defendant mortgagor is entitled to a decree of reformation as prayed and directing the complainant to execute and deliver the releases applied for prior to default upon payment therefor in accordance with the terms of the mortgage as reformed. I will advise a decree accordingly.