Dorsheimer v. Rorback.

DORSHEIMER vs. RORBACK and others.

1. No relief can be had, even in equity, by the next of kin, against the sureties on an administrator's bond.

2. Such sureties are, however, proper, though not necessary parties in a suit in equity against the administrators for a distributive share.

3. A general demurrer will not lie, where the demurrant is a proper party, though no relief can be had against him.

4. When a party who cannot read is sought to be bound by a writing under seal, it must appear that he had it read to him or knew its contents Where such a paper, for want of such due execution, is invalid and void, it will not protect administrators who have paid moneys, relying on it, that they paid the moneys in good faith.

5. The next of kin may maintain a suit in equity for his distributive share, and although the courts of law and the Orphans Court have jurisdiction in such case when there has been a decree of distribution, yet the suit will be maintained by this court; and when there has been no decree of distribution, the remedy must be in equity.

6. Ordinarily, a legatee or next of kin must sue the executor or administrator only for the legacy or distributive share; he cannot join with him the debtors to the estate, or other persons. But where there is collusion between the executor and the debtor or person having the property in his hands, or where the executor is insolvent, the debtor may be made a party, and recovery be had against him.

The argument of the cause came on upon a general demurrer of the defendants, the executors of Nathan Drake, and upon the answer of the other defendants, the replication of the complainant, and the proofs of both parties.

*Mr. Pitney* and *Mr. Coult*, for complainant.

*Mr. McCarter*, for defendants.

THE CHANCELLOR.

The complainant is one of the next of kin of John Rorback, deceased, late of Newton, in the county of Sussex. He died on the 15th of February, 1855, intestate, never having been married, leaving as next of kin four brothers and sisters, and the complainant and her sister, Martha Scott, the only children of a deceased sister, each of whom was thus entitled to one-tenth of the residue of his personal estate. His personal estate amounted to more than $75,000, and the residue of it, on a settlement of the account of the administrators in the Orphans Court of Sussex county, on the 2d of December, 1856, was $67,018. The complainant was entitled to one-tenth of this, or $6701.80. This is not disputed by the defendants.

Administration of the estate of the intestate was granted March 26th, 1855, by the surrogate of Sussex, to Samuel Rorback and John H. Neldon. Their sureties were Charles P. Rorback, Nathan Drake, and John Rorback. After set-

tlement of the account, both the administrators and Nathan Drake died. The bill was filed against John Rorback and Charles P. Rorback, and against Charles P. Rorback as surviving executor of Samuel Rorback; Susan M. Neldon, administratrix of John H. Neldon; and the executors of Nathan Drake. Susan M. Neldon died after answer, and the suit was revived by bill against the administrator *de bonis non* of John Neldon.

The demurrer is upon the ground that in a suit in equity against administrators for an account, or for a distributive share, no relief can be had against the sureties; that their contract is with the Ordinary, and that they are amenable to him only. I am of opinion that no relief can be had even in equity, by the next of kin, against the sureties on the bond. There is no precedent for it in this state or in England. Vice Chancellor McCoun, in *Carow* v. *Mowatt*, 2 *Edw. Ch.* 57, upon the authority of decisions in Virginia, cited by him, held that the sureties and representatives of an administrator could be declared liable in the same suit. But this decision is so contrary to the principles on which a recovery is held and the proceeds administered upon administrators' bonds, that I do not feel constrained to follow it. But while I am of opinion that no decree for relief can be had against the sureties in this suit, I am also of opinion that the sureties are proper, though not necessary parties. They are interested in the result; they may be called upon by suit at law for the amount which may be recovered in this suit against the representative of their principal. They will be bound by the decree made in this suit as to the amount due to the complainant, and it is proper that they should have a right to defend, so as to prevent any collusion between the complainant and the principal, and to protect themselves from any neglect of the principal to make proper defence. The demurrer, therefore, being general, must be overruled, as these defendants are proper parties, although no decree for the payment of the share by them can be made in it. The only decree that will affect them must be against those who represent the

principals. Against this they would have been protected, if they had answered, and will be, if the bill is taken as confessed as against them.

The bill charges that the complainant is, and has always been, an idiot, not having sufficient capacity or understanding to transact any business; and she exhibits her bill by her guardian. The bill states that the administrators of John Rorback, deceased, paid her distributive share to the defendant, John Rorback, her assignee, and have recorded his receipt and release as such assignee in the surrogate's office. The bill denies that she ever executed, or was capable of executing, any assignment, and that if she did execute any such, it was obtained by fraud, without consideration, and without her understanding the contents or purport. The bill prays that the defendants may be decreed to pay her distributive share, with interest, and for such other relief as may seem proper. The defendants, John Rorback and Charles P. Rorback, for himself and as executor of Samuel Rorback, and the administrator of John H. Neldon, have answered. They deny the idiocy of the complainant. They set up that the distributive share of the complainant was, on the 27th day of April, 1857, paid by the administrators of John Rorback, deceased, to John Rorback, by virtue of an assignment made to him of the complainant's share by her sister, Martha Scott, who acted as her guardian. That they relied upon said assignment and the receipt of the assignee. They also state that the complainant executed a receipt to them under her seal, dated July 23d, 1856, but do not state that this was presented, or was ever delivered to the administrator, or that the share was paid on faith of that receipt. They insist that the share was paid to the assignee in good faith, in the belief that the sister was authorized to make the assignment, and that the circumstances warranted such belief.

The evidence shows that the complainant, who is fifty-eight years old, is, and has been, from childhood, if not from her birth, an idiot, without capacity to make any contract or bargain, or to make any assignment of a share like this, or to

give a receipt or release for it. The evidence, with the exception of that of John Rorback, is all clear and decided upon that point. A large number of witnesses, who have been her neighbors for years, and have known her and her family well, have been examined, and I have no doubt of the truthfulness of their testimony. It is so clear and decided that I need not examine it here.

But the idiocy is of little consequence in the case. The assignment upon which the share was paid was not executed by her, but her sister as her guardian. The complainant was then over forty years old. Her sister could not have been guardian of her as an infant, or by any testamentary appointment. It appears by the will of her father, offered in evidence, dated May 1st, 1854, that he devised to her a farm in Canada where he resided, and directed that, as Mary, from her mental imbecility, was unfit to take charge of the farm, her sister Martha should act as her guardian, and take the management thereof. But this guardianship did not extend beyond the management of the farm. It made Martha not guardian of her person, but only trustee of the property devised to her in the will. It is clear, and it is not disproved, that Martha had no power to assign Mary's share.

The receipt was signed by making a mark; and the subscribing witness who made the mark for her, does not recollect or testify that the receipt was read to her, or that she was in any way informed of its contents. There is no proof that it was read to her, or that she had any knowledge or intimation of its contents. One of the cardinal requisites of any writing under seal is, that the person executing it should have it read to him, or know its contents. If the grantor can read, he will be presumed to have read it; but if he cannot, it must be shown that it was read, or its contents made known. The addition of the words, " if he require it," in the second resolution in *Throughgood's case*, 2 *Rep*. 9, where this rule is laid down, does not apply to a case like this, where the party had no idea or notion of what the paper executed was, or for what purpose she touched the pen with which the

mark was made, and because she did nothing that could amount to a delivery.

The assignment and receipt both being invalid and void, the defendants contended on the argument, that the moneys were paid by the administrators in good faith, and they must therefore be protected.

I know of no rule at law or in equity that would protect persons making a payment under such circumstances, because it was made in good faith. If made honestly and without collusion with John Rorback, the assignee, it was made with great negligence and carelessness. John Rorback was the son of the administrator, Samuel. Both must be presumed to have known or heard, in some manner, of the infirmity of one so nearly related to them. John claimed shares known to his father and himself to be worth about $14,000, and at the time of payment settled and realized beyond question, for a consideration of $8000, a little more than half the cash value. The mere recital that Martha was guardian was not sufficient. They should have inquired for the documentary proof of such guardianship; and if the will had been produced it would have appeared that it did not pretend to extend to this money, but was a mere trust, limited to the Canada farm. They should have known that a sale or a settlement by a guardian or trustee at such a sacrifice of a settled valid claim, is never allowed or sustained.

Again : a bond, in which Samuel Rorback was surety, was given by John in August, 1855, to Martha Scott and her husband, for the price of these two shares, in the condition of which it was provided that Scott and his wife should, by mortgages, indemnify John Rorback from any claim to be made by the complainant for her share, which her sister had assigned as her guardian. This shows that Samuel knew that the power of Martha, as guardian, to assign was doubted so seriously, that his son, who was to pay for both little more than the cash value of one share, would not rely on it without abundant indemnity. Again : Martha Scott testifies that some time before the payment by the administrators, she

stayed at the house of her uncle Samuel, and talked with him about Mary's condition of mind. Indeed, it is hardly possible to believe that Samuel Rorback did not know of Mary's condition. He knew enough to require the utmost vigilance in seeing to the authority of Martha, and seeing that any paper signed by the complainant with her mark, had been read and explained to her. He made no question as to either, but paid over the money without inquiry. This was not only carelessness and negligence, but in an administrator who is a trustee for the next of kin, it is gross and almost criminal negligence. He pays over to his own son on papers which show their illegality on their face, the share of an idiot or imbecile, together with that of her ignorant sister, on a purchase for little more than half the value; an inadequacy of consideration so gross as almost of itself to amount to fraud, and such as would arouse the suspicion of any honest man. A trustee who stands by and allows his *cestui que trust* to be plundered, cannot be protected by the plea of good faith.

As to the receipt, dated a year before the payment, there is no evidence that the administrators ever knew of its existence. If they did, they knew that it was false, that the fact of the payment recited to have been made by them nine months before, was untrue, and that the amount never had been and never would be paid to her, but that the assignee claimed it for himself by the assignment.

The claim against the administrators of John Rorback, deceased, and their representatives, is sustained; they must be decreed to pay the whole amount of the distributive share, with interest.

The next of kin may maintain a suit in equity for his distributive share, and although the courts of law and the Orphans Court have jurisdiction in such case when there has been a decree of distribution, yet the suit will be maintained by this court; and when there has been no decree of distribution, as in this case, the remedy must be in equity. *Frey* v. *Demarest*, 1 *C. E. Green* 236.

It is claimed on part of the complainant that she is entitled

also to a decree against John Rorback for her distributive share, on the ground that he received it from the administrators on a void assignment and power of attorney, and now actually has the share in his possession; and that it is the duty of the court in this suit in which all parties concerned are before the court, to direct payment to be made by him, both because he is equitably bound to repay it, and because it might render unnecessary any suit by the representatives of the original administrators to receive it from him. Ordinarily, a legatee or next of kin must sue the executor or administrator only for the legacy or distributive share; he cannot join with him the debtors to the estate or other persons. But in cases where there is collusion between the executor and the debtor, or person having the property in his hands, or in cases where the executor is insolvent, the debtor may be made a party and recovery had against him. *Story's Eq. Pl.*, §§ 178, 514; *Holland* v. *Prior*, 1 *Myl. & K.* 237; *Long* v. *Majestre*, 1 *Johns. Ch.* 305; *Alsager* v. *Rowley*, 6 *Ves.* 748.

In this case collusion or insolvency is not alleged in the bill. This might have created difficulty if the question had been raised on demurrer. I think, for the reasons above stated, that the payment to John Rorback was not in good faith, but with negligence so gross as to amount to collusion, and that, although there is no evidence of the insolvency of the administrators or their present representative, yet that the death of both these administrators, and the difficulty of following the estate into the hands of the representatives of either, and of having a recovery by showing assets in their hands, brings the case within the reason of the rules, and makes John Rorback a proper party. And the fact that, by an invalid assignment which he presented as a legal one, he actually received the distributive share of the complainant, and still has it, brings him clearly within the reason of the rule. The evidence shows that he received the whole of the complainant's share; indeed he admits it, but insists that part of it was paid to Martha Scott and her husband, for the com-

plainant. I think the evidence shows that only $6700 in all was paid to James and Martha Scott. Martha Scott testifies that only $1000 was paid at the time of the assignment. John Rorback says: "After the papers were made out, I paid them then, *I think*, $2500, which they said they wanted to put in a house." Afterwards he says: "I paid $2500; I did not take any receipt to show the payment; the whole business was done in David Thompson's office; I think the money was delivered to Mrs. Scott or to Mr. Thompson for them; it was done in the office; *I think* it was paid in cash." David Thompson testifies that he does not recollect of seeing any money pass that day, August 17th, 1855. Now, one of the papers drawn on that day was the assignment; another was John Rorback's bond to the Scotts to pay them $7000 on their giving him an indemnity against any claim by the complainant; both these papers are dated on that day. One surety on the bond is John Rorback's counsel, who, they all say, was present at Thompson's office at the settlement. All agree that the price to be paid for the assignment was $8000. Now, the giving a bond at this time for $7000 seems to me conclusive proof that only $1000 was paid. When $500 was paid a short time afterwards, it was endorsed on the bond. No business man would, with two lawyers present to direct, have given a bond for $7000 to secure the balance due of $8000, if $2500 of it had been paid. The $6700 thus paid to Martha Scott was less than her distributive share; the amount received by him for her was $6978.78. He retained more than that amount of what was paid him by the administrators. This they paid to him as the complainant's share, supposing that he had the right or power to receive it. True, he did not receive it for her, but for himself. Had he received it for her, she could have recovered it at law as so much money received for her use. But he obtained it by a fraud upon the administrators; and in a court of equity, which has cognizance of frauds, and whose duty it is to remedy them, he may be held liable to the complainant for this money belonging to her which he thus fraudulently obtained

from the administrators. A decree compelling him to pay it to the complainant will be equity as against him, and will do justice to the representatives of the administrators. Their negligence in paying to him without inquiry into his right, under circumstances of suspicion, cannot avail him to prevent the recovery of the money thus obtained by his positive fraud.

It is objected on part of the defendants that no decree can be had against him because it is not included in the relief prayed for in the bill, nor is such recovery warranted by the facts stated in the bill. The bill contains the general prayer for relief; but the special prayer is that the defendants may be decreed to pay her the full amount of her distributive share, with interest. He is one of the defendants. The prayer, then, is sufficient.

The facts stated in the bill are sufficient to entitle the complainant to the relief. The position of the counsel for the defendants, that no relief can be had except upon the *allegata et probata,* is sound. The facts on which the relief is founded must not only be proved, but must be sufficiently stated in the bill to warrant the relief.

The bill sets out *verbatim* the receipt of John Rorback, dated April 25th, 1857, in which he acknowledges that he received of the administrators $13,957.56, as the distributive share of Martha and Mary. The half of this, or $6978.78, belonged to the complainant, and this receipt admits that it was received as her distributive share. This receipt, though not a formal allegation of the fact that he thus received this distributive share, is a sufficient and clear statement of the fact that he received it, and that he received it under the pretence that he was her assignee. The bill states that she never made any assignment, and that if her signature was affixed to any such assignment it was obtained by fraud and imposition. These, with the allegations already noticed of her being entitled to the share, are sufficient to ground a decree for relief against John Rorback.

There must be a decree in favor of the complainant for $6978.78, with interest from December 2d, 1866. If there

is any legal claim to refund out of this the amount claimed to have been refunded by John Rorback, it may be shown before the master, and deducted by him from the amount.

The decree must be against John Rorback, and the administrator of John H. Neldon, and the executor of Samuel Rorback. And the amount must be made out of the defendant, John Rorback, if sufficient property of his can be found for the purpose; and if not, out of the representatives of John H. Neldon and of Samuel Rorback.