Rorback v. Dorsheimer.

---

RORBACK and others, appellants, and DORSHEIMER, respondent.

1. The rule is not entirely inflexible, that the substance of the complainant's case must be contained in the stating part of the bill.

2. A charge of fraud should not be general, but if so charged, the defect must be taken advantage of by demurrer.

3. The sureties of administrators cannot be joined as substantial parties to a bill against the representatives of such administrators, which is grounded on an alleged devastavit committed by such original administrators.

4. The proper course of proceeding in such case, pointed out.

---

The opinion of the Chancellor is reported in 8 *C. E. Green* 47.

*Mr. McCarter*, for Rorback and others.

*Mr. Coult* and *Mr. Pitney*, for Mary Dorsheimer.

Rorback *v.* Dorsheimer.

The opinion of the court was delivered by

THE CHIEF JUSTICE.

The facts involved in this controversy will be found so fully stated in the opinion of the Chancellor, read in the court below, that I feel it is quite unnecessary here to reproduce them in detail. They will, consequently, be referred to in a general way, and only so far as may be requisite to present the questions considered and decided.

Mary Dorsheimer, alleging herself to be an idiot, by her guardian, exhibited this bill. The purpose was to recover her distributive share in the estate of her grandfather. This ancestor died intestate, and his administrators made a final settlement of their accounts in the Orphans Court. It is shown that they duly paid over the residue of the moneys thus appearing to be in their hands, to the various descendants of the intestate, with the exception of the share now in dispute in this action. This last share was paid over by the administrators to one John Rorback, by virtue of an assignment thereof, alleged to have been made by the complainant to him. The first branch of this controversy relates to the validity of this instrument. The complainant insists that it was obtained from her by fraud, and that the money was paid under it by the connivance of the administrators. These administrators thus inculpated being dead, the suit is against their representatives. John Rorback is also a defendant. The bill, in this aspect of it, seeks to charge this money on both Rorback and the administrators now before the court. The decree of the Chancellor in this respect, was to the effect that this defendant, Rorback, was primarily responsible, and that a secondary liability vested in these representatives.

The defence interposed to this part of the case, was two fold. First, that no fraud in obtaining the assignment in question and in paying the money upon it, was shown. But I think these facts are very clearly established. The Chancellor has briefly stated a portion of the circumstances, and has, in a measure, discussed the evidence. I do not feel it incumbent on me to do so. It seems to me that the testimony cannot

leave any doubt on this subject in any unprejudiced mind. In this particular I fully assent to the views expressed by his Honor, the Chancellor.

But, in the second place, it was said that this charge of fraud in the procurement of this assignment, was not set out as a substantive part of the complainant's case, but was inserted merely in the charging part of the bill, in anticipation of the defence of payment.

It must be admitted that this pleading is dangerously meager in point of substance, and is defective, in many respects, in point of form. On account of these defects, it is somewhat difficult to say where the stating part of the bill ends. It is not certain, therefore, that the charge of fraud in question, is not a part of the statement of the complainant's case. And it is also to be remembered that the rule is not entirely inflexible, that all the grounds of suit must be embraced in the stating portion of the pleading. Indeed, so far is this from being the case, that in his discussion of this subject, Judge Story, in his treatise on Equity Pleading, (§ 32 a) says: " But if the material facts are specifically averred, there does not seem to be any positive rule of law which requires that those facts should be averred in the stating part of the bill, and precede what is technically called the charging part of the bill. Regularly, however, all the material parts of the plaintiff's case will certainly find their more appropriate place in the narrative or stating part of the bill."

It was also further urged, in reference to this same matter, that even if the charge of fraud was to be considered as a part of the narrative of the complainant's case, still it was not charged with sufficient particularity. Many cases were cited by counsel to establish the doctrine that an averment of fraud in general terms was inadmissible. There can be no doubt as to the rule. In equity, as at law, every material fact must be stated with reasonable fullness and particularity. But this imperfection, if it is to be the subject of exception, must, in the main, be brought to the notice of the court by a demurrer. It is but seldom, and only when the statement is

so vague and loose as to be utterly inert and inefficient, that it can be objected to at the final hearing. The general rule is, that the court will not listen to such objections at the hearing of the case, if the matters stated are such that the court can properly proceed to a decree. In the present case, the charge of fraud in the bill, such as it is, has been put at issue by the answer, and has been amply elucidated by the evidence; obviously, therefore, both parties have understood the matter in dispute; for the court then, at the last stage of the cause, to annul the whole proceeding, on the ground that a formula of pleading has not been complied with, would be inequitable, and not, it is believed, in accordance with a single precedent. But in addition to this obvious answer to the position, it is further to be noticed that the bill, defective as it is in numerous particulars, is not open to this specific objection. The fraud is not charged in general terms. It does not say merely, that the assignment was obtained by fraud, but it avers that the complainant was an idiot, and that the defendant procured the execution of the instrument by taking advantage of her infirmity. Such transactions are seldom circumstantial; there is no necessity for the use of device or artifice; in such affairs the fraud generally consists in the simply asking the idiot to sign the instrument, and the facts of idiocy and of signing, are the only ingredients of it. It is therefore questionable with me whether, in this respect, this bill would have been assailable even by a demurrer; that it is so, on the final argument of the merits, I see no plausible reason to assert.

The foregoing are the grounds contained in the appeal of John Rorback, and for the reasons stated, I think the decree in these respects, should be in all things affirmed.

The other branch of the case arises on the cross-appeal of Mary Dorsheimer, the complainant in the court below. The part of the Chancellor's decree thus objected to, appertains to the following facts:

It has been already stated that the bill is filed against the administrators of the deceased administrators. But it also makes defendants the sureties on the bond of such deceased

administrators, and it seeks a decree against them on account of the misappropriation of the moneys constituting the distributive share of the complainant. So far as the effort is to charge the representatives of the deceased administrators on account of such misapplication of the funds of the estate, it seems legitimate enough, as the statute makes the personal representatives of an administrator responsible for a devastavit committed by him. But the question now is, whether, in a bill in chancery against such representatives, grounded on such alleged devastavit, the sureties on the administrators' bond can be joined, and the bond declared to be forfeited. The Chancellor denied the right of the court to make such decree, and the complainant below, on that head, has brought this cross-appeal.

This joint proceeding against the administrators or their representatives, and the sureties on the bond, has in its favor no English precedent. But there are cases in this country which, where certain conditions exist, sanction the course. The leading case in this line, most pressed upon the argument, is that of *Carow* v. *Mowatt*, 2 *Edw. Ch. R.* 57. This decision sanctions the procedure in question, in all cases where the remedy at law on the bond is difficult and doubtful, and it appears, further, to hold that such emergency arises where the original administrators are dead. The adjudications of the courts of South Carolina and Virginia sustain the same doctrine. But I cannot assent to the reasoning on which these cases rest. Their principal grounds seem to be, that such course of practice is highly convenient, and that it is beneficial to the surety. But the argument derived from these considerations, proves by far too much, for it would clearly legalize a resort to equity in all cases of suretyship. It would always prevent a multiplicity of suits, and the presence in court of the surety would, in a measure, be advantageous to him, as he could watch the proceeding against his principal, and thus assure himself against an illegal or excessive recovery, for which an ultimate responsibility may rest upon himself. But if equitable interposition is to be thus justified, it seems

clear that such jurisdiction must extend over the whole field of remedies afforded by law to obligees against principal and surety. To the extent specified, such jurisdiction would always be convenient, and always advantageous. And yet it is undeniable that this jurisdiction does not exist. As a general rule, it is undoubted that equity has no such cognizance. Nor am I willing to concede that, when the remedy on the bond becomes difficult or doubtful at law, a court of equity can lend its aid. Indeed, if the remedy were entirely lost at law, it would be difficult, as I think, to maintain the right so to intervene. When such power is claimed, the character of the obligation to be enforced, appears to be entirely overlooked. The obligation inherent in a bond is altogether of a legal nature. It is enforced against a surety on the ground of his legal contract. Neither in morals nor in law, is he to be held beyond the express terms of his covenant. Both parties to the agreement, by the very form in which they put it, subject it to the operation of legal remedies. As then, neither the nature of the contract nor its form, places it within the cognizance of equity, to bring about such a result some new element must supervene, and that new element must be a subject of equitable jurisdiction. If, for example, a discovery becomes necessary, or fraud attaches to the instrument, then obviously the equitable right to investigate and decide will arise. But I think no case can be found, except those just referred to, in which it has been held, that a court of equity, as against a surety, will take charge of the case on the sole ground that it has become difficult to enforce his bond against him at law.

Independently of these general objections to the jurisdiction in question, it seems to me there are others which specially apply in the present case, and to all similar cases, and which are not to be obviated.

This suit is brought by a single distributee of an estate. The other distributees are not parties. The moneys secured by the administration bond is a common fund, established by law for the equal benefit of all these distributees.

It is alleged in this case, that the residue of this estate was divisible into five portions, and that four of these portions have been paid.   As between this complainant and these administrators, who are defendants in this suit, it may be proper to consider these facts as established ; but no such conclusive inference can be drawn with respect to persons not joined in this proceeding.   There has never been any decree for distribution in the Orphans Court, so that the number of distributees has not been definitely ascertained. With respect to those who are absent from this proceeding, the fact of the payment of their shares is mere allegation, and nothing more.   It may be, in point of fact, that not one of them has received satisfaction for his dividend. It does not seem to me that under such circumstances it can be reasonably contended, that any part of the money, secured by this administration bond, can be legally taken and appropriated to a single distributee.   Suppose such appropriation should exhaust all the money that can be raised on this bond, and it should afterwards be discovered that some of the absent distributees have not been paid, or that their number is greater than is supposed.   It seems to me that it is clear that the Chancellor is here asked to do what no court should do—to distribute a fund, which is a common security for several parties, in the absence of some of those who are interested, and who are afforded no opportunity of being heard with respect to its dispensation.   The laws of this state have appointed a mode for equally distributing the moneys recovered on administration bonds.   The bond, when forfeited, is to be put in suit by the order of the Ordinary, and the sum realized is to be dispensed under the superintendence of the same officer.   By the method thus prescribed the rights of all parties are guarded and ensured.   This system has, by the usage for a long period of time, proved itself capable of completely and easily accomplishing the purpose for which it was designed, and I think that a new method of proceeding ought not to be grafted upon it, at all events

except under very peculiar circumstances and in cases of strict necessity.

But, even if the foregoing reasons were not controlling, and if I thought, under proper conditions, the proceeding by this joint remedy in chancery could sometimes be used, still, in my opinion, it could not be resorted to in the present case. My reason for this conclusion is, that the remedy at law is neither difficult nor uncertain. The plain course of action is this : to take out letters of administration *de bonis non* on the estate of the intestate ; demand the moneys admitted to be in the hands of the original administrators at the time of their death ; and if not paid, to treat such refusal as a breach of the bond, and thereupon apply to the Ordinary for an order to put it in suit. The administrator *de bonis non* can then proceed to obtain an order for distribution, and can thus, with technical regularity, pay the shares which are unsatisfied. I am unable to see any obstacle to this course.

In my judgment, the decree of the chancellor should be in all things affirmed, but without costs on either side.

Decree unanimously affirmed.