In December, 1929, complainant, by a contract in writing, agreed to purchase from defendant a lot of land in Ocean county. He prays that the contract be annulled on the ground of fraud in its inception. The defendant was engaged in the development of a very large tract known as Pinewald, fronting on Barnegat bay. The lot in question is described as lot No. 1, block 41, of Jeffrey lane subdivision of Pinewald. The bill of complaint alleges that complainant was induced to enter into the contract by false representations made by defendant:
"(a) That all the other lots in the block named were sold and that the purchasers thereof had contracted to build homes thereon immediately. *Page 177 
"(b) That a large hotel was to be built on the said development within a reasonable length of time.
"(c) That extensive improvements were about to be made to the beach abutting the said development for the benefit of the purchaser of lots in the subdivision mentioned above.
"(d) That if the complainant at any time thereafter was not satisfied with the purchase of said lot, the complainant's money was to be refunded to him by the defendant and said contract was to be declared null and void and of no effect."
Representations (b) and (c) require little consideration inasmuch as a large hotel has been built on the Pinewald development and as extensive improvements have been made to the beach for the benefit of lot owners.
The sale to complainant was effected through the efforts of a Mrs. Esswein, an agent of defendant and one of a numerous corps of salesmen employed by it. She told complainant, before the contract was executed, that if he were not satisfied with his lot, the company would buy it back from him at the same price. Mr. Raker, the president of defendant company, testified that the company never had any intention of buying back the lot; that it was in the business of selling and not buying. "A representation of an intention is a representation of an existing fact, and if false, is actionable." Zuckerman v. Geller, 103 N.J. Eq. 145.
On the other hand, "a distinction is necessary also between cases where the representation of an intention is, in fact, a mere promise collateral to the contract and where it amounts to an affirmation of a present state of mind." Roberts v. James,83 N.J. Law 492. I think the statement by Mrs. Esswein that the company would buy back the lot if complainant were dissatisfied, constituted a collateral promise and that it is not binding on the corporation because Mrs. Esswein had no authority in that respect and was never represented to have such authority. Furthermore, the promise was not in writing as required by the statute of frauds.
Mrs. Esswein also informed complainant that every lot in the same section as his lot had been sold except three, and that the purchasers were under an obligation to the defendant *Page 178 
immediately to build on their lots. This statement was relied upon by complainant and was one of the factors which moved him to buy. It was true that these lots had been sold but it was not true that the purchasers were under any obligation to build. The materiality of this misrepresentation is evident. If houses were shortly to be erected on most of the lots in the neighborhood, complainant's land would be much more valuable than if that part of the tract were likely to remain merely unoccupied land. A similar representation was considered in Roberts v. James,supra. Defendant argues that misrepresentation is not a ground for setting aside complainant's contract because Mrs. Esswein had no authority to make the representation. The only testimony that she had no authority is that of Mr. Raker, but it does not appear that he never gave instructions to the sales force or knew the exact instructions which were given them. Mrs. Esswein, who impressed me as an honest witness, stated that Mr. Schratzly, defendant's sales manager, had told her that which she repeated to complainant. Presumably he gave her the information with the intention that she would use it in effecting sales. But even if Mrs. Esswein were not authorized to have made this statement, the company is liable. "Where a person acts for another who accepts the fruits of his efforts, the latter must be deemed to have adopted the methods employed, as he may not, even though innocent, receive the benefits and at the same time disclaim the responsibility for the measures by which they were acquired."Pappas v. Foster Screen Co., 95 N.J. Eq. 399. To the same effect is a long line of decisions at law of which the latest isChapin v. Kreps, 106 N.J. Law 424.
The contract is on a printed form prepared by defendant. It sets forth that the seller (defendant) is endeavoring to create a recreation community in Pinewald and undertakes to expend at least ten per cent. of the receipts from sales in the development and improvement of Pinewald. The contract continues:
"Aside from the aforesaid warranty that said sum of not less than 10% shall be expended for the purposes aforesaid, the seller makes *Page 179 
no further representation, promises, or warranty of any character or kind, either similar or dissimilar to the one hereinbefore set forth as to the present condition of the property, for any contemplated plans, changes or improvements in connection therewith. As a consideration for inducing the execution of this contract by the seller, the purchaser represents that there have been no other promises, warranties, or representations made to it by the seller's officers, agents, or representatives."
Complainant is a German who first came to this country eight months before the date of the contract. He is a man of intelligence and some education, but at the time of the purchase he could neither read nor speak English. All his conversations with Mrs. Esswein were in German. When the contract was executed in defendant's office, there was present besides complainant and Mrs. Esswein, Mr. Schratzly. Complainant then spoke in German as usual; Mr. Schratzly in English and Mrs. Esswein did such interpreting as seemed necessary and spoke with each one in his own tongue. The contract was not read aloud to complainant or translated into German, although Mrs. Esswein knew and Mr. Schratzly must have suspected that complainant was ignorant of English. Complainant was not told that the paper contained the paragraph above quoted. He was merely informed that it was a contract for the purchase of the lot upon the terms which had been agreed upon between him and Mrs. Esswein. In these circumstances, defendant can have no benefit from the quoted provisions of the contract. Inability to read raises an exception to the rule that one will not ordinarily be permitted to prove that he did not understand what appears above his signature.McKlosky v. Kobylarz, 99 N.J. Eq. 202; Dorsheimer v.Rorback, 23 N.J. Eq. 46, 50.
Defendant argues that complainant should be denied relief because of laches and because he failed to rescind within a reasonable time. The contract was made December 26th, 1929. The first time after its execution that complainant visited Pinewald was December 1st, 1930. He then observed that the hotel which was in course of erection, was much further from his property than he had anticipated; that the improvement to the beach was not of the character he *Page 180 
had hoped; and that no houses were being erected in the vicinity of his lot. A day or so later, he called at the company's office in New York, learned the true facts and demanded his money back. His demand was immediately refused. His next step, taken two or three weeks thereafter, was to consult counsel, who, on December 22d 1930, wrote the defendant that he had been retained to institute suit for the return of the money. The bill was filed February 16th, 1931, and a subpoena was issued and handed to the sheriff for service six days later. Complainant has not made any payments to the defendant since he visited the property and has not, since then, taken any steps inconsistent with rescission. I do not recall whether the testimony discloses the time when complainant first became aware of the exact terms of the contract he signed and especially of the clause referring to representations made by defendant's agents. He should, of course, have insisted on the contract being translated to him before he signed it and not having done so, should have procured a translation at the first convenient opportunity thereafter. He would then have been warned that the company might attempt to repudiate the representations which had induced him to make the contract. But nothing in the contract contained would have been notice to him that any of the representations were false, and so I do not think he was called upon to take action until December, when he did inform defendant, in effect, that he rescinded. The defendant does not appear to have been harmed in any way by the delay of less than three months which occurred between December 1st, 1930, and the institution of this suit. Complainant acted within a reasonable time; more is not required of him. Williams
v. New Jersey Southern Railroad Co., 29 N.J. Eq. 311, 319;Roberts v. James, supra.
There should be a decree for complainant pursuant to the prayer of the bill. *Page 181