PARK GASOLINE COMPANY, A CORPORATION OF NEW JERSEY, PLAINTIFF, v. EDWARD L. CRUSIUS AND AMOS E. MAXWELL, DEFENDANTS.

Decided January 18, 1932.

For the plaintiff, *Burke, Sheridan & Hourigan.*

For the defendant Crusius, *Quinn, Parsons & Doremus.*

ACKERSON, S. C. C. This action is brought to recover upon a promissory note for $786.35 made by defendant Edward L. Crusius, to the order of the defendant Amos E. Maxwell, dated July 8th, 1931, payable one month after date at Fifth and Ocean avenues, Asbury Park, New Jersey, and endorsed by the said Amos E. Maxwell over to the plaintiff, Park Gasoline Company.

The complaint alleges the foregoing facts concerning said note and further states that the transfer thereof to the plaintiff was before maturity; that it is the present holder thereof; that it was presented at the time and place at which it was payable and payment was refused, whereupon it was protested for non-payment and notice of dishonor given to all parties concerned and that said note remains wholly unpaid, and that there is due thereon the sum of $786.35; protest fees and interest.

To this complaint the defendant, Edward L. Crusius, alone has filed an answer consisting of a general denial and three separate defenses.

The plaintiff now moves to strike out this answer on the following grounds, viz., that the answer proper is sham; that the first separate defense is sham, and that the second and third defenses are sham and/or frivolous.

Taking up the separate defenses first we find that the first one of these alleges that there was no consideration for the note. It appears from the affidavit submitted by plaintiff in support of this motion that the original note of which the one in suit is a renewal was given to secure part of the purchase price of a gasoline station sold by plaintiff to the defendant, Amos E. Maxwell, and that this renewal note was given to secure an extension of time in which to pay such part of the purchase price aforesaid, and if true this would be a sufficient consideration.

The defendant has failed to offer any competent proof of a lack of consideration. In his affidavit, referring to the note of which the one being sued upon is a renewal, the defendant said: "About three or four days prior to July 8th, 1931, Corcoran" (president of plaintiff corporation)

"and Maxwell called at my place of business * * * and asked about a note which Corcoran claimed to hold. I told him, in Maxwell's presence, that there was a failure of consideration in the note, inasmuch as Maxwell had not delivered the machines for which the note was given in payment." It will be noticed that this is merely a statement of what the affiant alleges he told the president of the plaintiff corporation. It is not a direct statement by the affiant that there was a failure of consideration or no consideration for the note. In any event it will be noted that this quoted conversation took place before the note now being sued on was given, and the affidavit goes on as follows: "At that time Corcoran informed me that he had placed this note" (the original) "with his bank for collection, but that he would call them and tell them not to send it. At the same time *we arranged for Maxwell to make up the deficiency in the consideration of said note* and Maxwell and Corcoran, for the Park Gasoline Company, agreed that said note could be renewed from month to month for a period of one year." So it appears that it was agreed that the alleged deficiency in the consideration was to be made up and there is absolutely nothing in the affidavit to show that the consideration was not thereafter made up as agreed. The affidavit fails to support the defense of "no consideration," and so far as partial failure of consideration is concerned, it not only is not pleaded, which is a requisite of proper pleading (13 *C. J.* 742, § 889), but it is not supported by competent proof, and there is nothing whatever to show or even suggest that any possible deficiency in the consideration was not made up before the note in suit was given.

The first separate defense is, therefore, sham and will be stricken out.

The second separate defense alleges that—

"Said note was fraudulently procured from defendant, Edward L. Crusius, under false pretenses by one Amos E. Maxwell, who represented to defendant Edward L. Crusius, that said note could be renewed without reduction from month to month for a period of one year, and the plaintiff, Park Gaso-

line Company, knew of said agreement before maturity when said note, as alleged, was endorsed to it; but is now conspiring with the said Amos E. Maxwell to enforce payment thereof, although it had full knowledge of the agreement between said Maxwell and the defendant Edward L. Crusius."

Presumably this statement is intended to raise the defense that the note in question was procured by a fraudulent misrepresentation of an intention that said note could be renewed in full. The only affidavit submitted by the defendant, however, entirely fails to substantiate this defense, even if sufficiently pleaded.

The only reference whatever in this affidavit to the subject of the renewal of the note is found in the following statement: "At that time" (referring to a time prior to the due date of the original note on July 8th, 1931), "Corcoran informed me" (the defendant Crusius) "that he had placed this note with his bank for collection, but that he would call them and tell them not to send it. At the same time we arranged for Maxwell to make up the deficiency in the consideration of said note and Maxwell and Corcoran, for the Park Gasoline Company, agreed that said note could be renewed from month to month for a period of one year. Whether or not he was successful in recalling this note, I do not know." There is nothing in this language, however, to indicate a present fraudulent intent on the part of said Maxwell with respect to the promise that the note could be renewed. The foregoing statement in the affidavit merely sets forth an ordinary agreement, which later was apparently broken, although the affidavit fails to state that fact. To spell fraud from such a meagre statement would be far beyond the realm of a reasonable inference. This defense is, therefore, sham.

Even if not sham, this defense as pleaded would be insufficient in law. In order to constitute fraud there must be a misrepresentation of an existing fact and not a mere promise. It is, of course, true that a representation of an intention as existing may, if false, avoid a contract induced thereby, because a misrepresentation as to the state of a man's mind is a misstatement of fact.

Nevertheless it is firmly settled that there is a distinction between cases where the representation of an intention is in fact a mere promise collateral to the contract and where it amounts to an affirmation of a present state of mind. In the former case there is no fraud because there is no misrepresentation of an existing fact. *Roberts* v. *James,* 83 *N. J. L.* 492 (at *p.* 498) ; *Stramke* v. *George A. Raker & Co.,* 156 *Atl. Rep.* 640.

I think that the alleged representation "that said note could be renewed without reduction from month to month for a period of one year" constituted a mere promise collateral to the note in question, and not an affirmation of a present state of mind It therefore follows that this second separate defense is insufficient in law to constitute a defense of fraud.

Furthermore, it is to be noted that the plaintiff is not the payee of the note in question but an endorsee, hence it must be alleged and proven, either that he took the note after maturity, or else with knowledge of the alleged false pretenses, but there is no such allegation in this pleading. It is alleged that the plaintiff had full knowledge of the agreement respecting renewals of the note, but there is no allegation that the plaintiff had any knowledge of any fraudulent intent on the part of the said Amos E. Maxwell who alone is charged with having "fraudulently procured" said note from the defendant.

It has been held, however, that a pleading cannot be discarded as being both sham and frivolous, and so it may be sufficient for present purposes to hold that this defense is frivolous and should be stricken out for that reason.

The third separate defense reads as follows:

"The said Amos E. Maxwell delivered to the defendant Edward L. Crusius a written agreement that said note would not under any circumstances be endorsed until another note in a like amount was delivered over to the defendant Edward L. Crusius. Plaintiff had knowledge of this written agreement before maturity of said note and, contrary to the terms thereof, is fraudulently conspiring with the said Amos E. Maxwell to illegally enforce payment thereof. Said note

has not been delivered to the defendant Edward L. Crusius in accordance with said agreement, of which the plaintiff had knowledge, and plaintiff likewise has knowledge that said note has not been delivered to defendant Edward L. Crusius."

In the first place this alleged defense is deficient in a very important particular. It fails to allege that the plaintiff at the very time it acquired said note had knowledge of the alleged written agreement restricting delivery thereof or if it had not, that it acquired said note after maturity, and hence was not a holder in due course. The only allegation upon the subject of notice in this pleading is the statement that "plaintiff had knowledge of this written agreement *before maturity* of said note." This is not sufficient, because if it acquired such knowledge after obtaining the note for value but before maturity, it would not disturb the plaintiff's status as a holder in due course and subject it to the defense otherwise available between the original parties.

Furthermore the defendant's affidavit is absolutely silent upon the subject of plaintiff's knowledge of the alleged written agreement making the delivery of the note in question dependent upon a condition precedent. On the other hand plaintiff's affidavit explicitly denies any such knowledge.

The third separate defense is, therefore, sham and will be stricken out for that reason.

Turning now to the general denial set forth in the answer proper, we find that the only disputed question of fact, aside from the amount due on the note which depends on the determination of the questions herein considered, is whether the note was actually presented for payment at the time and place at which it was payable. In the view I take of the matter, however, this question is immaterial, for the reason that the defendant Crusius is the maker of the note and on its face is the one primarily liable thereon. In the case of *Adams* v. *Hackensack Imp. Com.,* 44 *N. J. L.* 638, 646, it was held that "the contract of the maker, acceptor or obligor" (of commercial paper) "is to pay the holder of the paper, and the place for payment is designated simply for the convenience of both parties. The only effect of the payor having

the money at the bank where the paper is payable is that it will enable him to plead a tender in exoneration of interest and costs of suit, provided he makes his tender good by payment of the principal into court." The principle of this case was embodied in section 70 of the "Negotiable Instruments act" (3 *Comp. Stat., p.* 3743, § 70), which provides as follows:

"Presentment for payment is not necessary in order to charge the person *primarily liable on the instrument;* but if the instrument is, by its terms, payable at a special place, and he is able and willing to pay it there at maturity; such ability and willingness are equivalent to a tender of payment upon his part; but except as herein otherwise provided, presentment for payment is necessary in order to charge the drawer and endorser."

Section 192 of the act provides that:

"The person 'primarily' liable on an instrument is the person who *by the terms of the instrument* is absolutely required to pay the same; all other parties are 'secondarily' liable."

Section 60 of the same act in defining the liability of the maker of a negotiable instrument makes no reference to the necessity for presentment in order to fix liability. The section provides as follows:

"The maker of a negotiable instrument by making it engages that he will pay it according to its tenor," &c.

Section 66, however, in fixing the liability of a general endorser of negotiable paper expressly makes due presentment for payment a pre-requisite to liability, for it provides, *inter alia,* that a general endorser "engages that on due *presentment,* it shall be accepted or paid, or both, as the case may be, *according to its tenor."*

Furthermore section 29 of the same act provides that—

"An accommodation party is one who has signed the instrument as maker, drawer, acceptor or endorser, without receiving value therefor, and for the purpose of lending his name to some other person; such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only one accommodation party."

And so it has been uniformly held that under these provisions of the act the relation that had existed previously between an accommodation maker and a holder for value who· knew him to be such has been changed, and that now an accommodation maker is primarily and absolutely liable to the holder for value, notwithstsanding such holder at the time of taking the instrument knew him to be an accommodation party. *Clifford* v. *West Hartford Creamery Co.,* 153 *Atl. Rep.* 205, 213.

It is apparent, therefore, that failure to present the note in question for payment at the time and place provided for in the note would not be a defense to this action on the part of this defendant as the maker thereof. Nor can he save himself from interest and costs of suit upon the theory that he was able and willing to pay at maturity at the place provided, thereby effecting a tender, because he has failed to plead such ability and willingness, or a tender, which is a pre-requisite. *Adams* v. *Hackensack Imp. Com., supra.* In fact defendant's affidavit does not allege such ability and willingness to pay the note, but on the contrary demonstrates the defendant's unwillingness to do so at maturity.

The denial of due presentment of the note contained in the answer may not be sham as claimed by the plaintiff, but it attempts to raise an issue upon an immaterial matter, and may, therefore, be disregarded or considered as frivolous so far as the defendant Crusius is concerned, and the court is, therefore, privileged to strike it· out for that reason of its own motion. *Mt. Pleasant Cemetery Co.* v. *Erie Railroad Co.,* 74 *N. J. L.* 100. The balance of the general denial contained in the answer proper is sham.

The motion to strike out the answer and separate defenses will, therefore, be granted for the reasons hereinbefore stated, and an order may be presented in accordance with the conclusion thus reached.