Webb, the complainant, was appointed administrator of the estate of William J. Roessler, deceased, by the surrogate of Mercer county. His bond was for $15,000. The sole beneficiary under the will predeceased Roessler. Roessler died intestate, possessed of little personal property and seized of considerable real estate; he was a builder and had a number of houses in the course of construction when he died. Webb assumed that the estate was solvent; it later turned out that debts far exceeded the personal estate. Webb thought, as so many laymen think, it was his duty as well to administer the real estate for the creditors, and honestly undertook its management; he sold some of the real estate and used the proceeds and the proceeds of the personal property to carry on, all to the knowledge and with the acquiescence of most, *Page 341 
if not all, the creditors, including the defendant, Updike-Kennedy Company. The heirs had conveyed title to Webb (he had given back a declaration of trust in their favor), and title being in him, he had no misgivings in using the personal estate to further his laudable mission of redeeming the estate from insolvency. After a sale of one or more of the properties, the Updike-Kennedy Company called Webb to account in the orphans court. The orphans court charged Webb with the personal estate as well as the proceeds of the real estate, but refused to allow him credit for expenditures on the real estate. On appeal, the prerogative court ordered eliminated from the account all items pertaining to the realty, that Webb be charged with the personal property and allowed for disbursements in administering the personal estate. The decree was affirmed by the court of errors and appeals with modifications presently unimportant. In reRoessler, 110 N.J. Eq. 570. It would seem that the Updike-Kennedy Company pursued Webb in the orphans court in a discovery proceeding under sections 139 and 139a of the Orphans Court act and that the court ordered Webb to deposit in his administrator's account $3,058.89, apparently the net proceeds of the personal property, and upon his failure to obey, the Updike-Kennedy Company moved the ordinary for leave to sue on the bond. The suit in the supreme court on the bond resulted in a judgment in favor of the ordinary against Webb and his surety for the penalty of the bond and interest, $15,562. The court of errors and appeals affirmed the judgment. Ordinary v. Webb,112 N.J. Law 395. While the suit was pending at law, Webb filed this bill to restrain the Updike-Kennedy Company from prosecuting it on the ground that the Updike-Kennedy Company consented to and acquiesced in the spending of the personal estate to save the real estate for the creditors. The law action was allowed to proceed to judgment. When this cause came on for hearing leave was given to amend and supplement the bill, setting up the judgment and a prayer to restrain the Updike-Kennedy Company from moving the ordinary to assess its damages under the recovery. The testimony leaves no question of *Page 342 
Webb's good faith and honesty of purpose, nor of his ignorance of the law and stupidity in using the personal property to save the real estate; and it also leaves no doubt that the Updike-Kennedy Company knew he was using it and how, and consented. Shortly after Webb took upon himself the burden of his office he consulted with the president of the company, told him of his plans, and in the completion of the houses bought all or most of his material from the Updike-Kennedy Company, and paid the bills from the proceeds of the real estate and the personal property; the president knew of the condition of the estate, how it was being administered, the source from which the money came and to what end it was being put. The Updike-Kennedy Company was an active participant in Webb's irregularities, ignorant, of course, that his conduct was irregular, but nevertheless acquiesced in the hope of prospective advantages. It was not until Webb had, under its eye, misapplied the personal property, not until it found that Webb's course would not be as profitable as promised, that the Updike-Kennedy Company faced about, repudiated Webb'sultra vires conduct and demanded of him an exact accounting of his duties as administrator. That cannot in conscience be tolerated. Counsel for the company, in his brief, does not seriously dispute the facts nor combat the equitable estoppel based upon the facts, but his argument is that Webb has had his day in court; that the matters now decided were at issue in the law court in the suit on the bond and are res adjudicata. It is true, the facts and the estoppel were raised at law, but they were not cognizable before the law tribunal and were properly brushed aside by the trial judge as no defense to the suit by the ordinary for a breach of the bond by Webb's failure to comply with the order to deposit. There were other breaches assigned, but the case turned upon the breach of that order. The equitable defense, though presented, being inadmissible at law, does not bar a timely presentation of it in equity. Headley v. Leavitt,65 N.J. Eq. 748. The plea of res adjudicata, which is substantially the only one raised by the answer, is without force.
All the creditors, save the Updike-Kennedy Company, seem *Page 343 
to have no grievance. After the Updike-Kennedy Company turned on Webb, creditors to the sum of $6,000 signed their consent to Webb's method of administering the estate. Connors, a creditor for $2,000, did not sign; he was a witness at the hearing, but offered no objection; just what his attitude is is not clear. The debts aggregate $14,000. The Updike-Kennedy Company, creditor for the remaining $6,000, is apparently the only remonstrant. The perplexing question is: What should be the form of relief? The ordinary's judgment is a fund to be by him parcelled among the victims of the administrator's delinquencies. Rorback v.Dorsheimer, 25 N.J. Eq. 516. An aggrieved creditor could apply to the ordinary to assess the damages to the creditors only as a group, to the extent of the personal estate misapplied, to be apportioned among them, not including the Updike-Kennedy Company; it would be inequitable to permit it to participate. All the creditors, including Updike-Kennedy Company, have the right to share in the proceeds of the real estate remaining. Webb is presently vested with the fee and may sell and give good title. Although as administrator he did not follow the real estate as provided by the statute, the real estate nevertheless is chargeable with the debts and now stands charged with them, and may be sold, if the administration of the estate be removed into this court, by the order of the court, upon the principle laid down in Haston v. Castner, 31 N.J. Eq. 697. Creditors will not be permitted to suffer by his default.
Counsel for Updike-Kennedy Company is of the impression that the administrator can be held in damage for his failure to file his administrator's bond and to account and to follow the statutory method of subjecting real estate to the payment of debts. The damage would be nominal except, perhaps, in the latter default, upon which no view is expressed; Webb being seized of the title it would seem to have been futile to acquire a bare statutory power of sale.
The complainant will be permitted to amend his bill for leave to administer the estate in this court. He will account for both the real and personal property, bringing in the *Page 344 
heirs-at-law as parties defendants with appropriate allegations and charges against them; he will also bring in all the creditors. The real estate will be ordered sold, and the equities then can be adjusted. If there are creditors who were not parties to the administrator's irregularities, Webb will respond to them for the entire estate, personal and real, and to all creditors for the real estate in order that none suffer, including Updike-Kennedy Company. Accountability can be determined upon the coming in of the account and upon the ascertainment of the damages, the sum will be certified to the ordinary for assessment under his judgment. We see no other way out of the unfortunate situation.
The Updike-Kennedy Company has not moved for an assessment of damages before the ordinary. If it shall take that action it will be enjoined upon the matter being brought to the court's attention by petition.