This is a suit to foreclose a mortgage, second to one held by the Home Owners' Loan Corporation, upon the home of the alleged incompetent defendant, Anna Maria Onorato. Mrs. Onorato is presently and, for the past several years, has often been confined in the Camden County Mental Hospital; she appears herein by the clerk of this court, her guardian ad litem. The defendant Nickolis Onorato is her husband and is in possession of the mortgaged premises.
The complainant corporation became the owner of its second mortgage by assignment from one Frederick H. Stafford, who took it by purchase and assignment from the trustees in liquidation of Emerson Building and Loan Association of Camden, New Jersey. The consideration stated in the assignment from the trustees to Stafford is "one dollar and other good and valuable consideration" and in the assignment from Stafford to the complainant, "one dollar."
Briefly stated, the events which gave rise to the present controversy between the parties are: August 8th, 1924, Mr. and Mrs. Onorato executed a mortgage for $3,600 on their property at Woodlynne, in Camden County, in favor of the Emerson Building and Loan Association; in 1933 the Onoratos were in default in payments of principal, interest and *Page 197 
taxes called for by that mortgage, and it was foreclosed; August 16th, 1933, a final decree was entered in the foreclosure suit and the total indebtedness of the defendants was fixed at $2,946.02 and $59 costs; Mr. Onorato applied to the Home Owners' Loan Corporation for a new mortgage; the governmental agency contacted the building and loan association and obtained from it a consent, in writing, to accept $1,945 in bonds of the loan corporation "in full settlement" of its claims against the Onoratos; to the loan corporation's printed form of consent, the building and loan association added these words: "Association reserves right to obtain second mortgage for balance due it;" subsequently, the loan corporation agreed to increase the amount to be paid the association from $1,945 to $2,481.48, and the association executed another form of consent submitted by the loan corporation, reading: "3% Guaranteed Bonds of the Home Owners' Loan Corporation in the amount $2,481.48 will be accepted in full payment and discharge of all indebtedness;"
settlement was arranged for June 22d 1934, at a title company, and the defendants attended; the loan corporation's printed form of settlement statement was used; it reveals that the loan corporation not only paid to the building and loan association the agreed sum of $2,481.48, but that it also paid out $812.13 for taxes and the expenses incident to settlement; at the settlement the Onoratos executed a mortgage to the loan corporation for $3,272.50, and the building and loan association produced, and the Onoratos signed, a second mortgage of $820 (there is no evidence that the loan corporation agreed to permit a second mortgage to be taken or that it was advised of its execution); October 17th, 1934, the building and loan association wrote Mr. Onorato advising him that at the settlement he had given a second mortgage to the association "for the amount due it" (no figure being indicated), and that interest of $16.40 (no rate being mentioned) would be due October 22d; Mr. Onorato retained counsel, denied that he or his wife had signed any such instrument and disavowed it; ten years and nine months later, on July 20th, 1945, trustees in liquidation of the building and loan association executed an assignment of the mortgage *Page 198 
to Frederick H. Stafford, of Philadelphia, and he, on the same day, assigned it to the complainant corporation.
It has long been the established rule in this state that the assignee of a bond and mortgage takes his assignment subject to all defenses which exist in favor of the mortgagor as against the mortgagee, the assignee being under a duty to ascertain from the mortgagor whether any defense exists. Estate of Esther, Inc., v. Veslor Realty Co. (Court of Errors and Appeals), 122 N.J. Eq. 46; 187 Atl. Rep. 372. Apparently, before taking an assignment of the second mortgage, neither the complainant nor its assignor made any inquiry of the defendants, or either of them, as to its validity of the amount due upon it — at least, there is no proof before me that any such inquiry was made.
It is noteworthy in this case that, notwithstanding the defendants never made any payment with respect to the second mortgage, a suit to foreclose was not instituted until this suit was commenced, February 7th, 1946. Why, if the building and loan association had dealt openly with the loan corporation and honestly with the Onoratos, did it not go forward to collect its money in October, 1934? Why, when the building and loan association was, itself, in financial difficulties and approaching the point where liquidation would be necessary, did it not take action? Why was not the true consideration revealed in the assignment from the trustees in liquidation to Stafford, and in that from Stafford to the complainant? What is the explanation for the failure of the original assignee, and of the complainant, to inquire of the Onoratos as to the validity of the mortgage and the amount due? Satisfactory answers to the questions just propounded are not to be found in the evidence.
It was the testimony of Mr. Onorato that while he and his wife could sign their names they could not, nor could either of them, read or write English. He appeared to be honest and truthful, and I accept his testimony as fact, especially as the complainant made no effort to disprove it, and that, notwithstanding the Onoratos, in their answer, had asserted their illiteracy and declared that if a second mortgage *Page 199 
was executed by them their signatures were obtained by fraud, without their knowledge and because of their ignorance.
One of the cardinal requisites of any writing under seal is, of course, that the person executing it should have it read to him, or know its contents. If the grantor can read, he will be presumed to have read it; but if he cannot, it must be shown that it was read to him, or its contents made known to him.Dorsheimer v. Rorback, 23 N.J. Eq. 46; affirmed, 25 N.J. Eq. 516.
In the instant case the complainant would have been content to make formal proof and rely upon the presumption that the signatures of the Onoratos on the mortgage, followed by a signed certificate of a qualified acknowledging officer, constitutedprima facie evidence of the due execution of the instrument by them. However, the acknowledging officer was a witness for the complainant and was subjected to an extended cross-examination. I was not favorably impressed by his testimony. He failed utterly to convince me that the existence or the contents of the second mortgage were made known to the Onoratos before they affixed their signatures thereto or when their acknowledgment was allegedly taken. His testimony, judged most charitably, could but serve to convince one that after twelve years he had no recollection whatever of the circumstances surrounding the execution of the mortgage by the Onoratos; his words and his manner indicated that what he said occurred was what he presumed occurred or what he knew should have occurred. Even such testimony as he gave with respect to the signing by the defendants and the alleged taking of their acknowledgment, was not corroborated by the secretary of the association who attended the settlement and was also a witness. I cannot but hold that the complainant failed to satisfactorily show that its second mortgage was read by or its contents made known to Mr. and Mrs. Onorato at the time their signatures were obtained.
The negotiations looking to a refinancing of the defendants' mortgage obligations by the loan corporation extended from March 22d 1934, or an earlier date, to the date of settlement, June 22d 1934, and I am strongly persuaded that a *Page 200 
letter of June 8th, 1934, addressed to the fee attorney for the loan corporation, was written by the solicitor of the building and loan association without knowledge of the execution by his client of the unqualified consent to accept $2,481.48 in full payment and discharge of the indebtedness of the Onoratos. Unfortunately, that consent bears no date, and there was no testimony fixing its date. However, it is certain that it was executed shortly before the settlement. It provided for a refund to the association of the sum of $225, which was paid to the tax collector of the Borough of Woodlynne after the association had given its preliminary consent to accept bonds and had suggested that it wished to secure a second mortgage from the mortgagors. The letter of June 6th, 1934, indicates that the consent was executed after that date. It is interesting to note in this connection, that the increase in the amount agreed to be paid by the loan corporation to the building and loan association was not just $225, but $536.48. It seems reasonable to assume, in view of the provisions of the Home Loan Act and the known policy of the Home Owners' Loan Corporation to disfavor the creation of mortgages second to mortgages it accepted, that the additional allowance of $311.48 was made to compromise and completely settle the debt to the building and loan association.
Another circumstance not without its significance in this case is that the settlement sheet used at the settlement contains no reference to a second mortgage, and no statement has been produced such as one would expect was given the Onoratos showing that a second mortgage was being executed and indicating the computation by which the association arrived at the consideration figure of $820. More striking still is the fact that the secretary of the association, who had known Mr. and Mrs. Onorato for a number of years as paying stockholders did not testify that the Onoratos could read and understand written English. These circumstances, together with the indefinite wording of the association's letter of October 17th and the failure of the association to demand or enforce payment of principal and interest on the mortgage for eleven years, convince me that the testimony of Mr. Onorato, that his signature and that of his wife were written *Page 201 
in the belief that they were signing only those papers necessary to create the loan corporation's mortgage, was true.
The building and loan association and its solicitor who represented it at the settlement were, of course, familiar with the federal legislation which created the Home Owners' Loan Corporation, and the rules and regulations promulgated by it. That legislation was conceived and adopted for the purpose of relieving distressed home owners by the refinancing and amortization of existing liens and encumbrances against the home property. It was intended solely for the benefit of such owners, and any benefit to creditors is merely incidental. Furthermore, it was not the design of the statute that advances should be made on the strength of mortgage security alone, freed of the usual obligation of the borrower for a deficiency on foreclosure and, in consequence, a public duty rests upon the Home Owners' Loan Corporation to enforce the personal liability of its mortgagors for deficiency judgments. Home Owners' Loan Corp. v. Grundy
(Supreme Court), 122 N.J. Law 301; 4 Atl. Rep. 2d 784.
Logically, and legally, therefore, the loan corporation is entitled to a full disclosure of any obligation, additional to its mortgage, which is being assumed by or exacted of its mortgagor. Stager v. Junker (Supreme Court), 14 N.J. Mis.R. 913; 188 Atl. Rep. 440.
The loan corporation was, by the statute, vested with the sole power of determining whether it would refinance indebtedness or not, and it may properly lay down conditions governing any particular situation. Thus, we find the following provision in section 4 (d) of chapter VI, of the rules and regulations of the corporation: "The Corporation will not refund any indebtedness where the mortgagor is required to pay more than he owes, through agreements either to pay future interest to the original mortgagee, or to absorb any loss of interest by the original mortgagee; * * * or to cover any assumed loss on account of acceptance of the bonds of the Corporation by the mortgagee. The Corporation will not become a party to any contract between a mortgagor and a mortgagee in reference to indebtedness refunded by the Corporation." True, there follows in this section a provision that a mortgagee may be permitted to take a second mortgage *Page 202 
if the amount thereof does not exceed the difference between the Corporation's appraisal and the amount of the Corporation's first mortgage. But that provision is concluded with the positive declaration that in no case shall the "second trust or second mortgage to such other mortgagee or lien holder be in terms which would cause the mortgagor's payments to the Corporation to be a hardship, or deprive the mortgagor of reasonable opportunity to pay such second mortgage or second trust."
In order for it to determine whether or not a proposed second mortgage embodies terms "which would cause the mortgagor's payments to the Corporation to be a hardship, or to deprive the mortgagor of reasonable opportunity to pay such second mortgage or second trust," it would obviously be necessary for the loan corporation to be fully advised of not only the amount but of the terms of the proposed instrument. In the instant case complainant relies upon the fact that the building and loan association inserted in its preliminary consent to accept bonds words purporting to reserve a right to obtain a second mortgage for any balance due it, and two letters written by its attorney to the loan corporation's fee or settlement attorney shortly before settlement was had. However, there is no evidence before me that any of these papers ever reached the Home Owners' Loan Corporation, and any knowledge the fee attorney may have had of the existence of or the intent to take a second mortgage, is not imputable to the corporation. Markowitz v. Berg, 125 N.J. Eq. 56; 4 Atl. Rep. 2d 410; affirmed, 127 N.J. Eq. 90;11 Atl. Rep. 2d 107.
An insurmountable barrier to the relief which the complainant seeks must be recognized in the fact and circumstance that the building and loan association agreed in writing, and without reservation, to accept bonds in the amount of $2,481.48 "in fullpayment and discharge of said indebtedness," i.e., the amount of its decree in foreclosure of $2,908.21, interest thereon of $198.71, $225 which it advanced to pay taxes, and $155.19 expenses after final decree. See 100 A.L.R. 1413;110 A.L.R. 250; 121 A.L.R. 117; 125 A.L.R. 809. *Page 203 
A mortgage such as that before the court, made without the knowledge of the Home Owners' Loan Corporation, contravenes the fundamental policy of the Home Owners' Loan Act (12 U.S.C.A., § 1461 et seq.), and the rules and regulations formulated in pursuance of the authority thereby granted to the Home Owners' Loan Corporation, and is void. Markowitz v. Berg, supra.
For the reasons assigned, I shall advise a decree dismissing the complainant's bill.